IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

_____
D.J. through his parent O.W.,                    :
on behalf of a class of those similarly          :
situated,                                        :
                          Plaintiffs,            :
                                                 :
vs.                                              :          Civil No. 3:16-cv-01197 (CSH)
                                                 :
CONNECTICUT STATE BOARD OF                       :
EDUCATION,                                       :
                          Defendant.             :
                                                 :          September 14, 2017
                                                 :
_____         :


**MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT PURSUANT TO FRCP 56**

**TABLE OF CONTENTS**

I.      INTRODUCTION ...................................................................................................1

II.     STATEMENT OF UNDIPUSTED MATERIAL FACTS ...................................1

        A.     The IDEA's Age-Eligibility Provision.....................................................1

        B.     Connecticut's Age-Eligibility Statute and Regulation ...........................2

        C.     Connecticut's Adult Education Programs ...............................................2

        D.     The Role of the Board in Special and Adult Education .........................3

III.    ARGUMENT ........................................................................................................4

        A.     Standard of Review ...................................................................................4

        B.     The IDEA and its Age-Eligibility Provision ...........................................5

        C.     The IDEA's Definition of "Public Education"........................................6

        D.     Providing Special Education to Students Over the Age of 21 Would Not
               be Inconsistent with Connecticut Law Regarding Public Education
               Generally ....................................................................................................7

        E.     Providing Special Education to Students Over the Age of 21 Would Not
               be Inconsistent with Connecticut Practice Regarding Public Education
               Generally ....................................................................................................8

        F.     *K.S. v. R.I. Bd. of Educ.* Was Wrongly Decided .....................................8

        G.     Plaintiff is Entitled to Summary Judgment as to Liability for his IDEA
               Claim ........................................................................................................12

        H.     Plaintiff is Entitled to Summary Judgment as to Final Declaratory and
               Injunctive Relief......................................................................................12

        I.     D.J. is Entitled to Summary Judgment as to Compensatory Education ...............13

IV.     CONCLUSION....................................................................................................14

# TABLE OF AUTHORITIES

**Cases**

*Anderson v. Liberty Lobby, Inc.*
477 U.S. 242 (1986) ................................................................................................ 4

*B.T. v. Hawaii Dep't of Educ.*
637 F. Supp. 2d 856 (D. Haw. 2009) ...................................................................... 7

*Doe v. East Lyme Bd. of Educ.*
790 F.3d 440 (2d Cir. 2015) ................................................................................... 14

*Donnelly v. Greenburgh Cent. Sch. Dist. No. 7*
691 F.3d 134 (2d Cir. 2012) ................................................................................... 4

*E.R.K. v. State of Hawaii Dep't of Educ.*
728 F.3d 982 (9th Cir. 2013) ......................................................................... passim

*eBay Inc. v. MercExchange, L.L.C.*
547 U.S. 388 (2006) ............................................................................................... 13

*Heublein, Inc. v. U.S.*
996 F.2d 1455 (2d Cir. 1993) ................................................................................. 4

*K.S. v. R.I. Bd. of Educ. by and through Cottam*
__ F. Supp. 3d __, 2017 WL 1901955 (D.R.I. 2017) .................................... 9, 10, 11

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*
475 U.S. 574 (1986) ............................................................................................... 4

*Polera v. Board of Educ. of Newburgh Enlarged City School Dist.*
288 F.3d 478 (2d Cir. 2002) ................................................................................... 13

*School Committee of Town of Burlington, Mass. v. Dep't of Educ. Of Mass.*
471 U.S. 359 (1985) ............................................................................................... 13

*St. Johnsbury Academy v. D.H.*
240 F.3d 163 (2d Cir. 2001) ................................................................................... 5

*United States v. West Virginia*
339 F.3d 212 (4th Cir. 2003) ................................................................................. 4

**Federal Statutes**

20 U.S.C. § 1400 ..................................................................................................... 5

20 U.S.C. § 1401 ............................................................................................. 6, 9, 10

20 U.S.C. § 1407 ..................................................................................................... 3

20 U.S.C. § 1412 ............................................................................................. passim

20 U.S.C. §§ 1411 ................................................................................................... 3

29 U.S.C. § 3111 ..................................................................................................... 10

29 U.S.C. § 3272 ..................................................................................................... 11

**State Statutes**

Conn G. Stat. § 10-73 ................................................................................................... 2

Conn. Gen. Stat. § 10-69 .......................................................................................... 2, 7

Conn. Gen. Stat. § 10-76 ........................................................................................ passim

Conn. Gen. Stat. § 10-76d ............................................................................................ 12

Rhode Island General Laws § 16-63 .............................................................................. 11

**Rules and Regulations**

Conn. Agencies Reg. § 10-76 .................................................................................. 2, 7, 12

## I.      INTRODUCTION

Plaintiff D.J. (suing through his parent O.W.) moves this Court for an Order granting summary judgment pursuant to Fed. R. Civ. Proc. 56 on his claim that Defendant Connecticut State Board of Education ("Board") violated the Individuals with Disabilities Education Act ("IDEA") by terminating his special education prior to the age of 22. The Board acted pursuant to Conn. Gen. Stat. § 10-76d(b) and Conn. Agencies Reg. § 10-76d-1(a)(4) which, contrary to the IDEA, purports to limit the obligation of the Board and the local educational agencies ("LEAs") under the Board's supervision to provide special education to the end of the school year in which a student turns 21. Despite this statute and regulation, individuals with disabilities such as D.J. are entitled to special education under the IDEA to the age of 22 because the Board through its extensive publicly-funded adult education programs makes available elementary and secondary education to adults regardless of age.

As set forth below, this case turns on an issue of statute interpretation premised on undisputed facts about the adult education programs offered by the Board. *See E.R.K. v. State of Hawaii Dep't of Educ.*, 728 F.3d 982 (9th Cir. 2013). Thus, summary judgment is appropriate.

## II.     STATEMENT OF UNDIPUSTED MATERIAL FACTS

### A.      The IDEA's Age-Eligibility Provision

The IDEA mandates that a "free and appropriate public education" ("FAPE") shall be "available to all children with disabilities . . . between the ages of 3 and 21, inclusive . . . ." 20 U.S.C. § 1412(a). Eligibility under the IDEA for special education and related services ordinarily ends, therefore, when a student becomes 22.

States may limit age eligibility for special education students, but *only* to the extent age eligibility is limited for public education generally:

> The obligation to make a [FAPE] available to all children with disabilities does not apply with respect to children—

> (i) aged 3 through 5 and 18 through 21 in a State to the extent that its application to those children would be inconsistent with State law or practice, or the order of any court, respecting the provision of public education to children in those age ranges . . .

20 U.S.C. § 1412(a)(1)(B).

### B.    Connecticut's Age-Eligibility Statute and Regulation

Conn. Gen. Stat. § 10-76d(b) provides in relevant part that "[i]n accordance with the regulations of the State Board of Education, each local and regional board of education shall … [p]rovide special education for school-age children requiring special education" but that "[t]he obligation of the school district shall terminate when such child is graduated from high school or reaches *age twenty-one*, whichever occurs first." (Emphasis added.) This statute is implemented by Conn. Agencies Reg. § 10-76d-1(a)(4), which provides in relevant part that special education "shall be continued until the end of the school year in the event that the child turns twenty-one during that school year." No LEA voluntarily provides special education beyond the minimum specified by this regulation. Plaintiff's Local Rule 56(a)(1) Statement of Undisputed Material Facts ("PSUMF"), ¶ 1. This statute and regulation apply *only* to special education students.

### C.    Connecticut's Adult Education Programs

Under Connecticut law, the LEAs under the Board's supervision and control are *required* to provide programs of public education to adults. Pursuant to Conn. Gen. Stat. § 10-69(a), "[e]ach local and regional board of education *shall establish and maintain* a program of adult classes or shall provide for participation in a program of adult classes for its adult residents …." (Emphasis added.) Such programs shall be provided in among other things "elementary and secondary school completion or classes." *Id.* Each and every LEA in Connecticut is required to provide some form of public adult education. PSUMF, ¶ 2.

Adult education for "elementary and secondary completion or classes" is required to be offered free of tuition or registration fees. Conn G. Stat. § 10-73a(a). And these adult education

programs are almost entirely funded by public funds—from the federal government, the state, and local sources. In 2016, $38,935,231 in state and local funds and $4,035,936 in federal funds were devoted to adult education programs in Connecticut. PSUMF, ¶ 3. Thousands of Connecticut adults are enrolled in these programs, many of whom are over the age of 22. *Id.,* ¶ 4.

Among other programs, the Board offers the General Educational Development ("GED") Program, the National External Diploma ("NEDP") Program, and the Adult High School Credit Diploma ("AHSCD") Program. PSUMF, ¶ 5. All three programs allow participants to attain a high school diploma. *Id.* And all three programs are almost entirely publicly funded. *Id.*, ¶ 6.

### D.    The Role of the Board in Special and Adult Education

The Board is responsible for providing public education for Connecticut residents, both children and adults. Under federal and state law, the Board is responsible for ensuring that the LEAs provide appropriate special education services to Connecticut residents. 20 U.S.C. § 1407 provides that each State that receives IDEA funds must "ensure that any State rules, regulations, and policies relating to this chapter conform to the purposes of this chapter." Similarly, 20 U.S.C. § 1412(11) requires that the State educational agency (in this case the Board) be "responsible for ensuring that–(i) the requirements of this subchapter [referring to 20 U.S.C. §§ 1411-1419] are met." And under Connecticut law, the Board is required to "provide for the development and supervision of the educational programs and services for children requiring special education…." Conn. Gen. Stat. § 10-76b(a).

The Board exercises management and supervision of the adult education programs provided by the LEAs and contracted non-profit organizations, including the GED, NEDP, and AHSCD Programs.  PSUMF, ¶ 7.

3

### E.      The Plaintiff

D.J. was born on May 29, 1995 and formerly received special education services at Hartford Public High School. PSUMF, ¶ 8. D.J. was diagnosed as having an intellectual disability shortly after his birth. *Id.*, ¶ 9. The Hartford Public School District terminated his special education services on or about June 30, 2016, after he had turned 21. *Id.*, ¶ 10. He would have liked to continue his education for close to an additional year (*i.e.* to the age of 22) to receive training in graphic design. *Id.*, ¶ 11.

## III.    ARGUMENT

### A.      Standard of Review

The Court may grant a plaintiff summary judgment pursuant to Fed. R. Civ. Proc. 56 "if the [plaintiff] shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." A fact is material if it "might affect the outcome of the suit under governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And a dispute is "genuine" if, considering the record as a whole, a rational jury could find in favor of the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). *See also Donnelly v. Greenburgh Cent. Sch. Dist. No. 7*, 691 F.3d 134, 141 (2d Cir. 2012).

Issues of statutory interpretation are appropriately resolved by summary judgment. *Heublein, Inc. v. U.S.*, 996 F.2d 1455, 1461 (2d Cir. 1993) ("Questions of statutory construction and legislative history present legal issues that may be resolved by summary judgment."); *United States v. West Virginia*, 339 F.3d 212, 214 (4th Cir. 2003) ("Because this dispute ultimately turns entirely on a question of statutory interpretation, the district court properly proceeded to resolve the case on summary judgment.")

### B.        The IDEA and its Age-Eligibility Provision

The IDEA (previously known as the Education of the Handicapped Act), 20 U.S.C. § 1400 *et seq.*, was enacted in close to its current form in 1975. Among the purposes of the IDEA is to "ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living." 20 U.S.C. § 1400(d)(1)(A). In enacting the IDEA, Congress found that "[i]mproving educational results for children with disabilities is an essential element of our national policy of ensuring equality of opportunity, full participation, independent living, and economic self-sufficiency for individuals with disabilities." 20 U.S.C. § 1400(a)(1). Prior to the IDEA, "the educational needs of millions of children with disabilities were not being fully met because," among other things, children with disabilities "did not receive appropriate educational services" and "were excluded entirely from the public school system and from being educated with their peers." 20 U.S.C. § 1400(a)(2).

The IDEA uses the term "children" broadly to include individuals up to the age of 22. It requires states to have policies and procedures to ensure that "[a] free appropriate public education is available to all children with disabilities residing in the State between the ages of 3 and 21, inclusive, including children with disabilities who have been suspended or expelled from school." 20 U.S.C. § 1412(a)(1)(A). The Second Circuit has interpreted this language as entitling a student to a FAPE until "the last day of his 21st year." *St. Johnsbury Academy v. D.H.*, 240 F.3d 163, 168 (2d Cir. 2001). This entitlement does not apply, however, to children "aged 3 through 5 and 18 through 21 in a State to the extent that its application to those children would be inconsistent with State law or practice, or the order of any court, respecting the provision of public education to children in those age ranges." 20 U.S.C. § 1412(a)(1)(B)(i).

In connection with the passage of the Education of the Handicapped Act, 46 States supported the goal of providing a FAPE to all children between the ages of 3-21 by 1980. S. Rep. No. 94-168 (1975) at 18. The Senate Committee on Labor and Public Welfare recommended, however, that States be allowed a limited exemption from the 3-21 age range "where State law does not authorize, or expressly prohibits, the expenditure of public funds to provide such an education to any children in these age groups." *Id.* at 19. The IDEA's default age range would continue to apply, however, "where a State does *in fact* provide or assure the provision of free public education to non-handicapped children in these age groups." *Id.* (emphasis in original).

C.     **The IDEA's Definition of "Public Education"**

The term "public education" is not defined by the IDEA. Other parts of the IDEA, however, do elucidate this term. The IDEA defines "free appropriate public education" as "special education and related services" that:

> (A) have been provided at public expense, under public supervision and direction, and without charge;
>
> (B) meet the standards of the State educational agency;
>
> (C) include an appropriate preschool, elementary, or secondary school education in the State involved; and
>
> (D) are provided in conformity with the individualized education program required under section 1414(d) of this title.

20 U.S.C. § 1401(9).

The definition of "public education" for purposes of Section 1412(a)(1)(B)(i) the IDEA can be derived by removing those aspects of the above definition that relate to the education's "appropriateness" as opposed to its "free" and "public" character. *See E.R.K.,* 728 F.3d at 987-88. "Public education" therefore means one that is "1) provided at public expense, under public

supervision and direction, and without charge; and 2) involves preschool, elementary, or secondary education." *Id.* at 988.

### D.    Providing Special Education to Students Over the Age of 21 Would Not be Inconsistent with Connecticut Law Regarding Public Education Generally

Connecticut *law* requires the Board to provide adult education programs for secondary and elementary education at public expense and under public supervision and direction. "[E]ach local and regional board of education *shall establish and maintain* a program of adult classes or shall provide for participation in a program of adult classes for its adult residents …." Conn. Gen. Stat. § 10-69(a)(emphasis added). And these programs must include "elementary and secondary school completion or classes." *Id.* As a result, each and every LEA in Connecticut is required to provide some form of public adult education. PSUMF, ¶ 2. Furthermore, Connecticut law requires that programs for "elementary and secondary completion or classes" be offered free of tuition or registration fees. Conn G. Stat. § 10-73a(a).

Conn. Gen. Stat. § 10-76d(b) and Conn. Agencies Reg. § 10-76d-1(a)(4) do not qualify as state laws "respecting the provision of public education" within the meaning of 20 U.S.C. § 1412(a)()(1)(B) sufficient to terminate entitlement to special education under the IDEA. This is because this statute and regulation apply *only* to special education and not to public education generally. As set forth above, Section 1412(a)(1)(B) is applied by comparing the state's law and practice relating to the education of students with disabilities with its law and practice relating to education generally.[1]

_____

[1] In a separate case that preceded the *E.R.K.* litigation, the Hawaii district court considered a similar Hawaii regulation that purported to limit the age eligibility of special education students only. That court found that "although Haw. Admin. R. 8-56-15 … prohibits disabled children from continuing special education services after reaching the age of 20, there was no such prohibition for general education students." *B.T. v. Hawaii Dep't of Educ.*, 637 F. Supp. 2d 856, 862-63 (D. Haw. 2009). The court therefore properly concluded that this regulation was

(continued...)

Thus, providing special education to the full extent of federal eligibility (to the age of 22) is in no way inconsistent with Connecticut *law* regarding public education.

### E.   Providing Special Education to Students Over the Age of 21 Would Not be Inconsistent with Connecticut Practice Regarding Public Education Generally

As a matter of *practice*, Connecticut provides public secondary and elementary education to adults over the age of 21 at public expense and under public supervision and direction. Three programs supervised by the Board—the GED, NEDP, and AHSCD programs—clearly constitute "secondary" education as they are intended to lead to a high school diploma or its equivalent. PSUMF, ¶ 5. *See E.R.K.*, 728 F.3d at 988 (finding Hawaii's GED and NEDP programs were "public" and "secondary" education under the IDEA). Thousands of Connecticut residents, many over the age of 22, avail themselves of these programs. PSUMF, ¶ 4.

Furthermore, these programs are almost entirely publicly-funded. PSUMF, ¶ 6. And the Board exercises management and supervision of the adult education programs provided by the LEAs and contracted non-profit organizations, including the GED, NEDP, and AHSCD Programs. *Id.*, ¶ 7.

Thus, providing special education to the full extent of federal eligibility (to the age of 22) is in no way inconsistent with Connecticut *practice* regarding public education.

### F.   *K.S. v. R.I. Bd. of Educ.* Was Wrongly Decided

The United States District Court for the District of Rhode Island has held, when faced with undisputed facts and a statutory scheme similar to the ones outlined above, that a Rhode Island regulation that purported to terminate eligibility for special education prior to the age of

---

(...continued)

insufficient to trigger the exception to the IDEA's default age eligibility rules in Section 1412(a)(1)(B). *Id.* at 863-64.

22 was valid. *K.S. v. R.I. Bd. of Educ. by and through Cottam*, __ F. Supp. 3d __, 2017 WL 1901955 (D.R.I. 2017). In doing so, the court expressly disagreed with the reasoning of *E.R.K.*. *Id.* at *5. Respectfully, the *K.S.* court's opinion—which is currently on appeal—was erroneous for at least three reasons.

First, the *K.S.* court noted, based on Rhode Island's compulsory education law, that there is no "right" to public education in Rhode Island over the age of 18 and that Rhode Island LEAs have discretion to prohibit older students from attending the regular high schools. *K.S.*, 2017 WL 1901955, at *4. Neither fact is relevant to the definition of "public education" under the IDEA for purposes of its age-eligibility provision. This provision does not look to whether older students have an absolute "right" to a public education. Rather, it looks to whether providing public education to older students would be *inconsistent* with State law or practice. Here, the statutory provisions and facts cited above demonstrate that providing public education to older students is in no way inconsistent with any Connecticut law or practice. To the contrary, it would be entirely consistent with Connecticut law and practice.[2]

Furthermore, the *K.S.* court's argument placed undue emphasis on *where* the education is provided. The court focuses entirely on state policies relating to admission to "regular public high schools." *K.S.*, 2017 WL 1901955, at *4. But the IDEA defines "secondary school" broadly to include a "nonprofit institutional day or residential school, including a public secondary charter school, that provides secondary education, as determined under State law, except that it does not include any education beyond grade 12." 20 U.S.C. § 1401(27). This provision

_____

[2] The *K.S.* court also noted that it is possible that LEAs have discretion to continue IDEA services for students over the age of 21. *K.S.*, 2017 WL 1901955, at *4. There was no evidence that this was true. In any event, the age-eligibility provision of the IDEA creates an absolute entitlement to a FAPE rather than leaving the provision of a FAPE to the discretion of a particular LEA.

9

expressly contemplates secondary education being provided outside the regular public high schools.

Second, the *K.S.* court found that "public education" under the IDEA does not include "all adult education programming, regardless of its form and delivery." *K.S.*, 2017 WL 1901955, at *5. The court's formulation of this issue was a straw man. D.J. does not contend here (and the plaintiffs did not contend in *K.S.*) that the fact that the Board offers *any* kind of adult education programming means that it necessarily offers public education to adults within the meaning of the IDEA. Rather, D.J. argues that the fact that the Board offers *elementary* and *secondary* education programs to adults at public expense mandates that students with disabilities be offered the same opportunity to complete their elementary and secondary education pursuant to 20 U.S.C. § 1412(a)(1)(B). *See E.R.K.,* 728 F.3d at 992 (concluding that Hawaii law had created a "two-track system" where "nondisabled students between the ages of 20 and 22 can pursue the diplomas that eluded them in high school, but students with special needs are simply out of luck"). If the Board merely offered cooking classes or post-secondary education to adults, for example, this would not be sufficient to trigger this provision.

In distinguishing "adult education" from "public education," the *K.S.* court noted that the IDEA uses the specific term "adult education" in its definition of transition services. *K.S.*, 2017 WL 1901955, at *5, *citing* 20 U.S.C. § 1401(34)(A). There is no reason, however, for these terms to be mutually exclusive. A public elementary or secondary education can be offered to non-adults and also to adults. Conversely, adult education can consist of an elementary or secondary education or a different kind of education. The terms overlap and nothing in the language or structure of the IDEA mandates that they be mutually exclusive.

The *K.S.* court also relied on the fact that a different part of the US Code governs adult education (specifically 29 U.S.C. § 3111 *et seq.*) than the part that governs elementary,

10

secondary, and special education (Title 20 of the U.S.C.). *K.S.*, 2017 WL 1901955, at *5. Again, there is no basis for considering these terms to be mutually exclusive. Indeed, 29 U.S.C. § 3272, cited by the *K.S.* court, specifically contemplates that "adult education" includes "activities necessary for the attainment of a secondary school diploma or its equivalent."

Third, and finally, the *K.S.* court erroneously found that "adult education" is not "elementary or secondary education" under Rhode Island law. *K.S.*, 2017 WL 1901955, at *6. This part of the court's reasoning is not directly applicable here. In any event, the court's reasoning was based on an erroneous interpretation of Rhode Island law. In support of this conclusion, the *K.S.* court cited the fact that laws pertaining to adult education are in a different chapter of the Rhode Island General Laws than the laws relating to elementary and secondary public education. *Id.*

The organization of Rhode Island's laws, however, has no relevance when compared to the plain language of such laws, which make it unambiguously clear that adult education can and does include elementary and secondary education. Rhode Island law specifically provides that the Board is required to provide *elementary* and *secondary* education to *adults*. Rhode Island General Laws § 16-63-5 (the Board is required to provide, among other things, to adults: "Basic education, which shall consist of efforts to alleviate illiteracy and provide opportunities for academic achievement up to grade twelve (12) and which shall include … preparation for the demonstration of competencies to qualify for the adult high school diploma or for examinations to earn the general education development or high school equivalency diploma.") The fact that the express purpose of these programs is to qualify for a high school diploma leaves no doubt that they must be considered "secondary education" under any reasonable definition of that term.

**G.     Plaintiff is Entitled to Summary Judgment as to Liability for his IDEA Claim**

As set forth above, providing special education to the age of 22 is not inconsistent with Connecticut law or practice regarding public education within the meaning of 20 U.S.C. § 1412(a)()(1)(B). *See E.R.K.*, 728 F.3d at 988-89. Nonetheless, Connecticut law purports to terminate students with disabilities' entitlement to special education as much as 364 days before they turn 22. Conn. Gen. Stat. § 10-76d(b) and Conn. Agencies Reg. § 10-76d-1(a)(4). This Connecticut law is contrary to the IDEA and D.J. is therefore entitled to summary judgment as to liability on his IDEA claim.

**H.     Plaintiff is Entitled to Summary Judgment as to Final Declaratory and Injunctive Relief**

As set forth above, Conn. Gen. Stat. § 10-76d(b) and Conn. Agencies Reg. § 10-76d-1(a)(4) and the implementation of that regulation by the Board violate 20 U.S.C. § 1412(a). Therefore, D.J. is entitled to a judicial declaration that this statute and regulation are invalid and may not continue to be applied to terminate entitlement to special education prior to the age of 22.

D.J.[3] is also entitled to a permanent injunction prohibiting the Board from terminating any Connecticut student with a disability's entitlement to special education until such student turns 22 or obtains a regular high school diploma. To obtain permanent injunctive relief, a plaintiff must satisfy a four-factor test: "(1) that [he] has suffered an irreparable injury; (2) that remedies at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in

---

[3] On September 1, 2017, D.J. moved for class certification pursuant to Fed. R. Civ. Proc. 23(b)(2). If such motion is granted prior to the decision on this Motion, these same arguments would apply to the Class.

equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).

D.J. has suffered an irreparable injury in that he was denied the education to which he was entitled under the IDEA. This is an actual injury and not speculative or conjectural. There are no adequate remedies at law, as the IDEA does not provide for monetary damages. *Polera v. Board of Educ. of Newburgh Enlarged City School Dist.*, 288 F.3d 478, 486 (2d Cir. 2002). The balance of hardships weighs in favor of D.J., as the harm to D.J. (denial of education) is far greater than the "harm" to the Board, which would consist solely of being required to expend additional funds to provide special education up to the age of 22. Finally, no public interest would be disserved by an injunction. The injunction would merely require the Board to conform to the requirements of the IDEA. Therefore, D.J. is entitled to final injunctive relief.

## I.      D.J. is Entitled to Summary Judgment as to Compensatory Education

The IDEA authorizes an award of compensatory education to individuals such as D.J. who have already had their special education services wrongfully terminated. Compensatory education is a form of equitable relief akin to an injunction rather than akin to an award of damages. *School Committee of Town of Burlington, Mass. v. Dep't of Educ. Of Mass.*, 471 U.S. 359, 369-70 (1985). In that case, the Court held that the predecessor to the IDEA allowed courts to issue a "prospective injunction directing the school officials to develop and implement at public expense an IEP placing the child in a public school" or the equivalent "retroactive reimbursement to parents" for arranging such services themselves. *Id.* In doing so, the Court rejected the argument that an award of retroactive reimbursement was "damages" not allowed by the IDEA. *Id.*

*A fortiori*, an award of compensatory education that does not necessarily require private school placement or reimbursement is also an equitable remedy and not damages. *See also Doe*

13

*v. East Lyme Bd. of Educ.*, 790 F.3d 440, 456 (2d Cir. 2015) ("Compensatory education is prospective equitable relief, requiring a school district to fund education beyond the expiration of a child's eligibility as a remedy for any earlier deprivations in the child's education.") (Internal quotation omitted).

As the Second Circuit recognized in *Doe*, compensatory education requires funding services "beyond the expiration of a child's eligibility." *Id.* Thus, the fact that D.J. has otherwise aged out of eligibility because he is now over 22 does not preclude an award of compensatory education. *See also Burr by Burr v. Ambach*, 863 F.2d 1071, 1078 (2d Cir. 1988), *vacated on other grounds by Sobol v. Burr*, 492 U.S. 902 (1989) and *reaff'd, Burr by Burr v. Sobol*, 888 F.2d 258 (2d Cir. 1989) (student was entitled to one-and-half years of compensatory education even though such education would extend beyond IDEA age eligibility). Indeed, in the aftermath of the *E.R.K.* case, the district court in Hawaii found that compensatory education was an appropriate remedy and ordered procedures to enforce that remedy. Kim Decl., Ex. E (Order Granting in Part and Denying in Part Plaintiff's Motion for Award of Compensatory Education and Appointment of Special Master; Order Denying Defendant's Motion for the Court to Determine the Appropriate Forum and Process for Evaluating Compensatory Education Claims of Class Members, entered August 22, 2014). Thus, D.J. is entitled to an award of compensatory education in the form of additional special education.

## IV.     CONCLUSION

For the foregoing reasons, the Court should grant this Motion and issue an Order: (1) entering summary judgment against Defendant on Plaintiff's claim under the IDEA; (2) entering summary judgment on D.J.'s claim for final declaratory and injunctive relief; and (3) entering summary judgment on D.J.'s claim for compensatory education.

DATED:  Los Angeles, California        September 14, 2017.

/s/ Jason H. Kim
JASON H. KIM
(admitted *pro hac vice*)
SCHNEIDER WALLACE COTTRELL
KONECKY WOTKYNS, LLP
2000 Powell Street, Suite 1400
Emeryville, CA 94608

NANCY B. ALISBERG
Fed. Bar No. CT 21321
Disability Rights Connecticut
270 Farmington Avenue, Suite 181
Hartford, CT 06030
Tel:  860 990-0175
E-mail: nancy.alisberg@disrightsct.org

SONJA L. DEYOE #6301
Fed. Bar. No. CT 29186
LAW OFFICES OF SONJA L. DEYOE. P.C.
395 Smith Street
Providence, RI 02908
Telephone: (401) 864-5877
Email:  sld@the-straight-shooter.com

Counsel for Plaintiff

15