IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| D.J. through his parent O.W., on behalf of a class of those similarly situated,<br>　　　　　Plaintiffs,<br><br>vs.<br><br>CONNECTICUT STATE BOARD OF EDUCATION,<br>　　　　　Defendant. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | Civil No. 3:16-cv-01197 (CSH)<br><br><br>November 22, 2017 |

**PLAINTIFF'S COMBINED MEMORANDUM IN OPPOSITION TO DEFENDANT CONNECTICUT STATE BOARD OF EDUCATION'S MOTION FOR SUMMARY JUDGMENT PURSUANT TO FRCP 56 AND REPLY MEMORANDUM IN SUPPORT OF HIS MOTION FOR SUMMARY JUDGMENT**

**I.    INTRODUCTION**

　　　For the reasons presented in Plaintiff's Memorandum in Support of Motion for Summary Judgment, Plaintiff D.J. (suing through his parent O.W.) opposes Defendant Connecticut State Board of Education's ("Board") Motion for Summary Judgment (DE 38). Plaintiff and not the Board is entitled to summary judgment because the Board does not dispute any of the facts that are material to the key dispute in this case regarding the interpretation of the age-eligibility provision of the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1412(a). Rather, in its Motion, the Board relies largely on irrelevant facts about the differences between the content of the instruction offered in its conventional secondary education program as compared to its adult education programs. These facts are irrelevant because: (1) the relevant provisions of the IDEA do not depend on the content of the education offered; and

(2) Connecticut's adult education programs are "public" in that they are provided pursuant to state laws at public expense and under public direction.

## II. THE UNDISPUTED FACTS SHOW PLAINTIFF AND NOT THE BOARD IS ENTITLED TO SUMMARY JUDGMENT

The Board does not dispute the factual basis of Plaintiff's motion for summary judgment. Specifically, the Board does not dispute that:

(1) The Local Education Agencies ("LEAs") for which the Board is responsible terminate special education for students with disabilities prior to their 22nd birthday pursuant to Conn. Gen. Stat. § 10-76d(b) and Conn. Agencies Reg. § 10-76d-1(a)(4). This statute and regulation on their face apply only to students with disabilities.

(2)  Connecticut law requires the provision of education to adults, including "elementary and secondary school competition programs or classes." Conn. Gen. Stat. § 10-69(a). *See also* Plaintiff's Local Rule 56(a)(1) Statement of Undisputed Material Facts in Support of His Motion for Summary Judgment Pursuant to FRCP 56 ("PSUMF"), ¶ 2 and Defendant's Local Rule 56(a)(2) Statement of Facts in Opposition to Summary Judgment ("DSFO"), ¶ 2.

(3)    Education to adults in Connecticut is provided through three programs—the General Educational Development ("GED") Program, the National External Diploma ("NEDP") Program, and the Adult High School Credit Diploma ("AHSCD") Program. PSUMF, ¶ 5 and DSFO, ¶ 5. All three programs allow participants to attain a high school diploma. *Id.*

(4)    These adult education programs are largely supported by public funds, and the Board "supervises" these programs. PSUMF, ¶¶ 3 & 7 and DSFO ¶¶ 3 & 7.

(5)    Thousands of Connecticut adults are enrolled in these adult education programs, many of whom are over the age of 22. PSUMF, ¶ 4 and DSFO, ¶ 4.

The Board does dispute the precise extent of its involvement in the adult education programs. DSFO, ¶ 7. As reflected above, however, the Board admits at a minimum that it "supervises the programs." *Id.*

These undisputed facts are sufficient to support summary judgment in favor of Plaintiff. The IDEA mandates that a "free and appropriate public education" ("FAPE") shall be "available to all children with disabilities . . . between the ages of 3 and 21, inclusive . . . ." 20 U.S.C. § 1412(a). Eligibility under the IDEA for special education and related services ordinarily lasts, therefore, until "the last day of [the student's] 21st year." *St. Johnsbury Academy v. D.H.*, 240 F.3d 163, 168 (2d Cir. 2001).

States may limit age eligibility for special education students, but *only* to the extent that application of the IDEA's default age-eligibility rules "would be inconsistent with State law or practice … respecting the provision of public education to children in those age ranges …" 20 U.S.C. § 1412(a). Thus, to determine whether a state may terminate special education services before the age of 22, the Court must look to Connecticut's "law" and "practice" concerning public education in general (*i.e.* not law and practice specific to special education) for individuals in that same age range. *See E.R.K. v. State of Hawaii Dep't of Educ.*, 728 F.3d 982, 987 (9th Cir. 2013) ("[W]e interpret 1412(a)(1)(B)(i) to mean that Hawaii cannot deny special education to disabled students aged 18 through 21 if in fact it provides 'free public education' to nondisabled students in that range of ages.")

The undisputed facts summarized above show that, under both Connecticut law and practice, Connecticut is required to, and in fact does, provide public education to students with no upper age limitation. This is all that is required to find that the Board violated Section 1412(a) of the IDEA.

3

**III.    D.J'S IDEA CLAIM IS NOT MOOT**

As set forth in Plaintiff's Reply Memorandum in Support of Plaintiff's Motion for Class Certification Pursuant to FRCP 23(b)(2), (DE 37), which is incorporated by reference, D.J.'s IDEA claim is not moot because he purportedly received a high school diploma. In summary, a purported high school graduation only moots an IDEA claim "where a student does not contest his graduation, and where he is seeking only prospective—rather than compensatory—relief." *T.S. v. Indep. Sch. Dist. No. 54, Stroud, Oklahoma*, 265 F.3d 1090, 1092 (10th Cir. 2001). Here, D.J. both contests his graduation and is seeking compensatory relief.

D.J. contests his graduation because the implementing regulations for the IDEA provide that a high school diploma can terminate a student's entitlement to special education, but only where that student is "graduated from high school with a *regular* high school diploma." 34 C.F.R. § 300.102(a)(3)(i). (Emphasis added.) A "regular high school diploma" is defined in turn as "the standard high school diploma awarded to the preponderance of students in the State that is fully aligned with State standards, or a higher diploma …." 34 C.F.R. § 300.102(a)(3)(iv). Furthermore, "[a] regular high school diploma does not include a recognized equivalent of a diploma, such as a general equivalency diploma, certificate of competition, certificate of attendance, or similar lesser credential." *Id.* The Board has presented no evidence that the purported high school diploma awarded to D.J. in 2013 is based on educational attainment that is "fully aligned with State standards." 34 C.F.R. § 300.102(a)(3)(iv). As the Massachusetts Supreme Court held in *Stock v. Massachusetts Hosp. Sch.*, 467 N.E.2d 448, 454-55 (Mass. 1984):

> It is sufficient that the trial judge found, and the record supports, that Stock would be incapable of attaining, by age twenty-two, sufficient learning and skills to merit the award of a high school diploma under existing standards. From this it follows inescapably that conferring a diploma upon the plaintiff at the age of eighteen was substantively inappropriate.

4

Like the plaintiff in *Stock*, it cannot reasonably be disputed that D.J. was incapable of attaining "sufficient learning and skill to merit the award of a high school diploma under existing standards" as set by state law. Conn. Gen. Stat. § 10-221a(b). D.J. lacks basic skills, such as reading, that would be expected of a *bona fide* high school graduate. *See* Affidavit of O.W. (DE 37-4).

## IV. THE DOE'S CONTINUED FUNDING OF CONNECTICUT'S IDEA PROGRAM DOES NOT EVIDENCE ANY APPROVAL OF THE BOARD'S AGE LIMIT

There is no evidence that the U.S. Department of Education ("DOE") has ever interpreted 20 U.S.C. § 1412(a) to allow a state to terminate special education prior to the age of 22 where that same state generally provides public education to older students. While it may be true that the DOE was aware that Connecticut terminated special education at the age of 21, there is no indication that the DOE was aware of Connecticut law and practice relating to public education for adults, as set forth above. Thus, the deference outlined by *Chevron U.S.A. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984) does not apply here. Furthermore, the Board has cited no authority applying *Chevron* deference based on speculation about an agency's interpretation of a statute where the agency merely fails to take action in response to a potential violation of a statute.

## V. THE BOARD RELIES ON IRRELEVANT FACTS TO OPPOSE SUMMARY JUDGMENT IN FAVOR OF PLAINTIFF AND SUPPORT SUMMARY JUDGMENT IN ITS FAVOR

### A. The Academic Content of the Board's Adult Education Programs is Irrelevant

Whether the academic content of the Board's adult education programs differs from the content of its conventional secondary education programs is irrelevant here. As set forth above, whether the Board is required to provide special education to students until their 22nd birthday

5

depends on whether it provides a "public education" (and not just a secondary education) to students without disabilities with no upper age limit.

The term "public education" is not defined in the IDEA. The Court should therefore apply a common sense meaning of that term and deem a public education as one that is provided at public expense and under some degree of public control. This is consistent with Congress's intent in passing the IDEA. *See* S. Rep. No. 94-168 (1975) at 19 (exemption to IDEA's age requirement may apply "where State law does not authorize, or expressly prohibits, the *expenditure of public funds* to provide such an education to *any* children in these age groups") (emphasis added). *See also E.R.K.,* 728 F.3d at 988 (defining "public education" under the IDEA as one that is "1) provided at public expense, under public supervision and direction, and without charge; and 2) involves preschool, elementary, or secondary education." *Id.* at 988. This broad interpretation would also be consistent with the overriding purpose of the IDEA to maximize educational opportunities for students with disabilities.

Nothing in the IDEA or its implementing regulations supports defining public education narrowly to be limited to a conventional high school curriculum. Even if public education is defined to be equivalent to secondary education (and it should not be, as set forth below), the IDEA broadly defines a "secondary school" as "a nonprofit institutional day or residential school, including a public secondary charter school, that provides secondary education, as determined under State law, except that it does not include any education beyond grade 12." 20 U.S.C. § 1401(27). This definition does not require any particular curriculum. The lack of a curriculum-based definition of secondary education is consistent with the overall scheme of the IDEA because, as the Supreme Court has held, the IDEA does not provide "any substantive standard prescribing the level of education to be accorded handicapped children." *Bd. of Educ. of Hendrick Hudson Central Sch. Dist., Westchester Cnty. v. Rowley*, 458 U.S. 176, 188 (1982).

Furthermore, under Connecticut law and practice, the Board's adult education programs (specifically the GED, NEPD, and AHSCD programs) undoubtedly qualify as secondary education. Pursuant to Conn. Gen. Stat. § 10-69(a), the required adult education programs shall include, among other things, "elementary and secondary school completion or classes." This law contemplates adult education intended to lead to a *high school diploma*–which is secondary education by any reasonable definition.

For these reasons, the Ninth Circuit in *E.R.K.* correctly rejected the exact same argument the Board makes here. As that court reasoned:

> Nothing in the IDEA … supports the proposition that a program constitutes "secondary education" or "free public education" only if it is structurally identical to the ordinary public high school curriculum offered to nondisabled students. … It is particularly unlikely that the IDEA's definitions incorporate such a distinction because, as we have noted, the statute construes education broadly. *See* 20 U.S.C. § 1401(29). … Education for high-school-aged students with disabilities often differs dramatically from "conventional" high school education. … In light of the variety of specialized secondary education the IDEA makes available to disabled students, it is simply implausible that the phrase "free public education" in the § 1412(a)(1)(B)(i) exception refers narrowly to a "conventional" high school curriculum.

*E.R.K.*, 728 F.3d at 990-91. That same reasoning applies fully here.

Relatedly, the Board argues that 34 C.F.R. § 300.102(a)(3)(iv), by defining the term "regular high school diploma" to exclude GED and similar alternative credentials, means that the definition of "public education" in the IDEA necessarily excludes programs relating to such credentials. This argument is a *non sequitur*. The term "public education" is a different and more inclusive term than "regular high school diploma." The intent of defining "regular high school diploma" narrowly to exclude alternative credentials is to prevent school districts from terminating their special education obligations by the simple expedient of issuing a student a piece of paper called a high school diploma. This rationale in no way requires defining "public education" just as narrowly. Indeed, applying a broad definition of "public education" while at

7

the same time applying a narrow definition of "regular high school diploma" point in the exact same direction, which is to *increase* access to special education services.

Finally, none of the Connecticut constitutional provisions or statutes cited by the Board demonstrates that providing continued special education services to the age of 22 would be inconsistent with any state law. Article VIII, Section 2 of the Connecticut Constitution provides that "[t]here shall always be free public and secondary schools in the state." There is no age limitation on who may attend these schools. Conn. Gen. Stat. § 10-186(a) provides that local and regional boards are required to make accommodations to allow students between the ages of 5 and 21 to attend a public school. It does not provide that such accommodations for older students are somehow disallowed. Furthermore, it addresses "public school," not "public education." As set forth above, public education under both the IDEA and Connecticut law may be provided outside a public school. Connecticut's compulsory education law, Conn. Gen. Stat. § 10-184 is simply not relevant here. The fact that older special education students are not *required* to attend school does not mean they do not have a right under the IDEA to special education if they wish to avail themselves of it. Finally, Conn. Gen. Stat. § 10-220(a) allows local and regional boards to make alternative accommodations for older students as opposed to allowing them to attend regular high schools. Again, public education under both the IDEA and Connecticut law may be provided outside the high schools so this provision is not relevant here.

> **B.** **The Level of the Board's Supervision of Adult Education Providers is Irrelevant**

Equally irrelevant is the fact that local and regional boards of education, working with contractors (as opposed to the Board) provide public adult education in Connecticut. Connecticut law *requires* programs of education for adults. Conn. Gen. Stat. § 10-69(a). This law further requires that "[e]ach local and regional board of education *shall establish and maintain* a program of adult classes or shall provide for participation in a program of adult classes for its

8

adult residents ….." (Emphasis added.) Thus, Connecticut law vests responsibility for "establishing and maintaining" adult education programs with public entities, the local and regional boards of education, which are under the Board's general supervision. Furthermore, as the Board does not dispute, Connecticut's adult education programs rely almost entirely on public funding. PSUMF, ¶ 3 and DSFO ¶¶ 3.

This is more than sufficient to find that Connecticut's adult education programs constitute public education. As the *E.R.K.* court reasoned, "a 'public' institution is one that is 'accessible … to all members of the community' and which 'provide[s] services to the people … under *some degree* of civic or state control." *E.R.K.*, 728 F.3d at 988 (quoting Webster's Third New International Dictionary 1836 (1968)) (emphasis added).

Furthermore, the IDEA specifically allows for public education to be provided by private contractors where necessary. The definition of "secondary school" in the IDEA includes a "nonprofit institutional day or residential school" and is not limited solely to schools operated directly by the state or a subdivision of the state. 20 U.S.C. § 1401(27). And, as set forth above, adult education is under Connecticut law an expressly public function. Thus, the fact that adult education in Connecticut is provided through local entities and/or contractors has no bearing on whether, as a matter of law or practice, Connecticut provides a public education to adults.

## VI. PLAINTIFF AND THE CLASS ARE ENTITLED TO COMPENSATORY EDUCATION

Contrary to the Board's contention, a "gross" violation of the IDEA is not required for compensatory relief. This rule applies only to a *procedural* violation of the IDEA, as opposed to a substantive one. *See Garro v. State of Conn.*, 23 F.3d 734, 737 (2d Cir. 1994) (holding that "the district court properly dismissed Garro's claim for compensatory education because such relief is unavailable to a claimant over the age of twenty-one in the absence of 'gross' *procedural* violations") (emphasis added). The two leading Second Circuit cases involving the purported

need to prove a "gross" violation to justify an award of compensatory education, as discussed below, both involve failure to comply with IDEA's *procedural* provisions. This case involves the complete failure to provide any special education from the end of the school year in which an individual turns 21. This is a substantive and not procedural violation of the IDEA.

Furthermore, the Second Circuit has held that where the result of an IDEA violation is complete exclusion from special education, a "gross" IDEA violation has been established so as to entitle the individual harmed by such exclusion to compensatory education. In *Burr by Burr v. Ambach*, 863 F.2d 1071, 1078 (2d Cir. 1988), *vacated on other grounds by Sobol v. Burr*, 492 U.S. 902 (1989) and *reaff'd*, *Burr by Burr v. Sobol*, 888 F.2d 258 (2d Cir. 1989), the student had been entirely deprived of a placement at an appropriate school between the ages of 20 and 22 due to the hearing officer's delay in issuing his decision. The Second Circuit found that an award of one-and-a-half years of compensatory education was appropriate:

> [W]e believe that Clifford is entitled to a remedy for deprivation of the right that the statute clearly provided him—a free appropriate education between the ages of three and twenty-one. … We do not believe that Congress intended to create a right without a remedy. If, in this case, we do not allow an award of compensatory education, then Clifford's right to an education between the ages of three and twenty-one is illusory. Clifford cannot go back to his previous birthdays to recover and obtain the free education to which he was entitled when he was younger.

*Burr*, 863 F.2d at 1078. The Second Circuit also noted that the IDEA regulations requiring a decision by a hearing officer within 45 days were "grossly violated in this case." *Id.* at 1076.

The *Burr* court's passing reference to the fact that the IDEA regulations were "grossly violated" was further embellished by the Second Circuit in *Mrs. C. v. Wheaton*, 916 F.2d 69, 75 (2d Cir. 1990). Again, however, the result was an award of compensatory education where procedural violations caused the plaintiff to be completely excluded from an educational placement:

10

> In light of our determination that the Department was required to follow EHA procedures before terminating J.C.'s education placement, the complaint clearly alleges violations of the EHA that led to J.C.'s *exclusion from his educational placement*.... [I]n *Burr I* the failure to comply with EHA procedures completely deprived the student of an educational placement until he was 21. Here, appellant alleges that defendants in effect took advantage of J.C.'s mental infirmities in order to evade EHA procedures, resulting in J.C.'s completely exclusion from an educational placement until he was 21, with disastrous results. We believe that the complaint states a claim for compensatory educational relief.

*Id.* (emphasis added).

Whether because a "gross" violation is not necessary where compensatory education is sought as a remedy for a substantive violation of the IDEA or because a "gross" violation has been established here by the fact that the violation here resulted in complete exclusion from special education, D.J. and the members of the putative class are entitled to compensatory education. Thus, summary judgment in favor of D.J. and against the Board is appropriate on this issue.

### VII. CONCLUSION

For the foregoing reasons, the Court should grant Plaintiff's Motion and deny Defendant's Motion and issue an Order: (1) entering summary judgment in favor of Plaintiff and against Defendant on Plaintiff's claim under the IDEA; (2) entering summary judgment in favor of Plaintiff and against Defendant on Plaintiff's claim for final declaratory and injunctive relief; and (3) entering summary judgment in favor of Plaintiff and against Defendant on Plaintiff's claim for compensatory education.

DATED:  Los Angeles, California    November 22, 2017.

/s/ Jason H. Kim
JASON H. KIM
(admitted *pro hac vice*)
SCHNEIDER WALLACE COTTRELL
KONECKY WOTKYNS, LLP
2000 Powell Street, Suite 1400
Emeryville, CA 94608

NANCY B. ALISBERG
Fed. Bar No. CT 21321
Disability Rights Connecticut
846 Wethersfield Avenue
Hartford, CT 06114
Tel:  860 990-0175
E-mail: nancy.alisberg@disrightsct.org

SONJA L. DEYOE #6301
Fed. Bar. No. CT 29186
LAW OFFICES OF SONJA L. DEYOE. P.C.
395 Smith Street
Providence, RI 02908
Telephone: (401) 864-5877
Email:   sld@the-straight-shooter.com

Counsel for Plaintiff

**CERTIFICATE OF SERVICE**

I, Jason H. Kim, certify that the Motion and all referenced attachments filed through the CM/ECF system will be sent electronically to the registered participants as identified on the CEF (CEF).

DATED:  Los Angeles, California          November 22, 2017.

/s/ Jason H. Kim
JASON H. KIM