# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| D.J., through his parent O.W., on behalf of a class of those similarly situated,<br><br>    Plaintiff,<br>v.<br><br>CONNECTICUT STATE BOARD OF EDUCATION,<br><br>    Defendants. | 3:16-cv-01197 (CSH)<br><br><br><br>**APRIL 5, 2019** |

## RULING ON PLAINTIFF'S MOTION TO AMEND

**HAIGHT, Senior District Judge**:

  Plaintiff D.J. ("Plaintiff" or "D.J."), through his parent O.W. ("O.W."), brings this putative class action against the Connecticut State Board of Education ("Defendant" or the "Board"), alleging violation of the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1412(a). Pursuant to Federal Rules of Civil Procedure 15(a)(2) and 16(b)(4), Plaintiff has moved the Court for an Order granting leave to file an Amended Complaint [Doc. 57], which would substitute[1] a new plaintiff in place of D.J. acting through his parent O.W.

**I. Background**

  Plaintiff D.J. is an individual with a disability who turned 21 years old on May 29, 2016. Doc. 1 (Compl.) ¶ 1. D.J. had been receiving a free appropriate public education ("FAPE") through the Hartford School District until June 30, 2016, the end date of the school year in which he turned

---

[1] We use the term "substitute" here and throughout this Ruling colloquially, and do not intend to refer to Federal Rule of Civil Procedure 25.

1

21. *Id.* D.J. and co-Plaintiff O.W., his parent and guardian, brought this purported class action "to establish the rights of Plaintiff D.J. and the class he seeks to represent to a free appropriate public education ("FAPE") under the Individuals with Disabilities Education Act ("IDEA")" until the age of 22. *Id.* ¶¶ 1, 8.

Under Connecticut law, a student who has not yet received a regular high school diploma remains eligible for special education through the end of the school year in which that student turns 21 years of age. *See* Conn. Gen. Stat § 10-76d(b); Conn. Agencies Regs. § 10-76d-1(a)(4). The IDEA and its implementing regulations state that the obligation to provide a free appropriate public education to children with disabilities "between the ages of 3 and 21, inclusive," 20 U.S.C. § 1412(a)(1)(A), does not apply to children with disabilities "who have graduated from high school with a regular high school diploma," 34 C.F.R. § 300.102(a)(3)(i). Such a diploma must be "fully aligned with State standards[.]" *Id.* at (a)(3)(iv).[2]

Plaintiff filed a Complaint on July 15, 2016, alleging that he had "not received a high school diploma," and that the FAPE he had been receiving pursuant to the IDEA had terminated at the end of the school year in which he turned 21. Compl. ¶¶ 2, 17, 20. Plaintiff seeks to certify a class of all individuals who would have otherwise qualified to continue receiving a FAPE but for turning 21, "because they have not or had not yet earned a regular high school diploma." *Id.* ¶ 36. Plaintiff also seeks a declaration that the Connecticut laws which terminate the entitlement of Connecticut students receiving a FAPE under the IDEA at the end of the school year in which the student turns 21 are inconsistent with the IDEA "because they apply only to special education students and not

---

[2] Connecticut law provides the criteria for high school graduation in this state. *See* Conn. Gen. Stat. §10-221a.

to non-special education students." *Id.* ¶ 30.

Discovery concluded in August 2017, and in September 2017 Plaintiff filed a motion seeking class certification and a motion for summary judgment. *See* Docs. 25, 28, 29. The motion for summary judgment was accompanied by an affidavit from O.W., D.J.'s parent, stating that "D.J. earned a diploma from Hartford Public High School in or about 2013. However, he continued to receive educational and related services from Hartford Public High School until on or about June 30, 2016." Doc. 29-9 (O.W. Aff. I) ¶ 5. This statement appeared to contradict Plaintiff's allegation in the Complaint that D.J. had "not received a high school diploma." Compl. ¶ 17. On the basis of O.W.'s sworn statement, the Board challenged Plaintiff's class certification and summary judgment motions, arguing that D.J.'s claims are moot because he obtained a high school diploma and that, for the same reason, he was not an adequate class representative. *See* Docs. 33, 40. In response, Plaintiff submitted a second affidavit from O.W. stating that:

> [o]fficials at Hartford High School offered D.J. a high school diploma from Hartford Public High School in or about 2013. When D.J was offered this diploma, as his guardian, I refused to accept it. D.J. was taking programs through Hartford High School . . . I was told that if D.J. accepted the diploma he would not be able to continue with those programs. I understood that the diploma was kept in the school office. Even though Hartford High School said that he could graduate, I knew that he had not learned any skills that would allow him to live independently or to support himself. . . . Starting in or about 2015, D.J. no longer attended classes at Hartford High School.

Doc. 37-4 (O.W. Aff. II) ¶¶ 5-7.

In light of the facts that had surfaced regarding Plaintiff's possible receipt of a diploma, the Court issued a Memorandum and Order on March 23, 2018 that raised the issue of standing *sua*

3

*sponte*.³ *See* Doc. 41. We concluded that the present record was insufficient to determine Plaintiff's standing to bring suit, and authorized further discovery on the issue for further consideration at an evidentiary hearing. *Id.* at 6-7. Consistent with this ruling, Plaintiff deposed Hartford Board of Education employee Dr. June M. Sellers. Doc. 57-1 (Pl. Br.) at 2-3.

Shortly before the scheduled evidentiary hearing, Plaintiff's counsel informed the Court and counsel for the Board that, "in an effort to resolve the standing issue raised by this Court *sua sponte*" they intended "to seek to substitute the current plaintiff with a different individual" and would "also seek to file an amended complaint." Doc. 51. The Board would not consent to permit amendment. Doc. 57-2 (Kim Decl. I) ¶ 6. However, the Board indicated "general agreement" that if the amendment were allowed, the current briefing would still apply. Doc. 57-5 at 1. On June 15, 2018, the parties informed the court that the parties had not reached agreement and that Plaintiff would prepare a motion for leave to file the Amended Complaint. Doc. 52.

That motion to amend has now been filed by Plaintiff [Doc. 57], and is the subject of this Ruling.

**II.     Discussion**

Through this motion, Plaintiff requests leave to file an Amended Complaint[4] that would substitute another individual, designated as A.R., as the plaintiff in place of D.J. Such amendment,

---

    ³ We noted that, although Defendant had framed the issue as one of mootness, the diploma at the heart of the dispute was purportedly issued or offered in 2013 – three years prior to the filing of Plaintiff's Complaint. Doc. 41 at 5. Thus, we concluded that the issue was "not whether Plaintiff's claims for relief became moot during the pendency of this lawsuit, but rather, whether Plaintiff had standing to bring this action in the first instance." *Id.*

    ⁴ Plaintiff's proposed Amended Complaint has been filed at Doc. 57-4, along with a redlined version at Doc. 57-3.

4

Plaintiff contends, will avoid unnecessary litigation regarding the standing issue. In that regard, Plaintiff is mistaken. While Rule 15(a), governing amendments to pleadings, is liberally applied, it does not extend to cases where Plaintiff attempts to use an amendment to cure a standing defect. In consequence, the Court must first address the threshold issue of whether Plaintiff can establish standing. The existence of standing to sue is a constitutional condition of a federal district court's subject matter jurisdiction over the suit. That issue must be resolved first, for if a court lacks jurisdiction, it can do nothing with the case.

### A. Standing

If Plaintiff is without standing, then amendment to a pleading will not be allowed, as a plaintiff "may not create jurisdiction by amendment when none exists." *Lans v. Gateway 2000, Inc.*, 84 F. Supp. 2d 112, 115 (D. D.C. 1999), *aff'd*, 252 F.3d 1320 (Fed. Cir. 2001) (citations and internal quotation marks omitted); *see also Kinra v. Chi. Bridge & Iron Co.*, No. 17 Civ. 4251 (LGS), 2018 WL 2371030, at *4 (S.D.N.Y. May 24, 2018) ("Second Circuit precedent strongly suggests that where, as here, there was no subject matter jurisdiction at the initiation of a suit because the plaintiff lacked Article III standing, a plaintiff cannot remedy that constitutional defect via Rule 17 substitution."); *Disability Advocates v. N.Y. Coalition for Quality Assisted Living*, 675 F.3d 149, 160 (2d Cir. 2012) ("If jurisdiction is lacking at the commencement of suit, it cannot be aided by the intervention of a [plaintiff] with a sufficient claim."); *Pressroom Unions-Printers League Income Sec. Fund v. Cont'l Assur. Co.*, 700 F.2d 889, 893 (2d Cir. 1983) (affirming lower court's denial of a motion to amend a complaint to substitute ERISA plan participants as plaintiffs where original named plaintiffs lacked standing); *Lierboe v. State Farm Mut. Auto. Ins.* Co., 350 F.3d 1018, 1023 (9th Cir. 2003) (holding lack of standing cannot be cured by amendment to substitute "another

[class] representative"); *Schreiber Foods, Inc. v. Beatrice Cheese, Inc.*, 402 F.3d 1198, 1203 (Fed. Cir. 2005) ("[I]f the original plaintiff lacked Article III initial standing, the suit must be dismissed, and the jurisdictional defect cannot be cured by the addition of a party with standing." (citation omitted)); 1 William B. Rubenstein, *Newberg on Class Actions* § 2:8 (5th ed. 2017) ("[I]f a case has only one class representative and that party does not have standing, then the court lacks jurisdiction over the case and it must be dismissed; if the case only had this one class representative from the outset, then there is no opportunity for a substitute class representative to take the named plaintiff's place because this means that the court never had jurisdiction over the matter."). Accordingly, standing is a *sine qua non* for Plaintiff to proceed with this action.

Article III standing consists of three "irreducible constitutional minimum[s]." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). "[A] litigant must demonstrate that it has suffered a concrete and particularized injury that is either actual or imminent, that the injury is fairly traceable to the defendant, and that it is likely that a favorable decision will redress that injury." *Massachusetts v. E.P.A.*, 549 U.S. 497, 517 (2007). Additionally, under the doctrine formerly known as "statutory standing,"[5] a plaintiff must establish that he has a cause of action under the statute at issue. *Harry v. Total Gas & Power N. Am., Inc.*, 889 F.3d 104, 111 (2d Cir. 2018).

---

[5] *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1387 n.4 (2014) (noting that, while the Supreme Court has referred to the exercise of "ask[ing] whether [the plaintiff] has a cause of action under the [relevant] statute" "as 'statutory standing[,]' and [has] treated it as effectively jurisdictional," that term is "misleading, since the absence of a valid (as opposed to arguable) cause of action does not implicate subject-matter jurisdiction, *i.e.*, the court's statutory or constitutional power to adjudicate the case" (emphasis in original) (internal quotation marks omitted))*; Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.*, 821 F.3d 352, 359 (2d Cir. 2016) ("Because the Supreme Court made clear in *Lexmark* that the 'statutory standing' appellation is 'misleading' and 'a misnomer,' we avoid this appellation going forward... it is simply a question of whether the particular plaintiff has a cause of action under the statute." (citation omitted))

Plaintiff bears the burden of establishing standing and the existence of a valid cause of action under the statute, and at the summary judgment stage "must set forth by affidavit or other evidence specific facts . . . which for purposes of the summary judgment motion will be taken to be true." *Lujan*, 504 U.S. at 560-61 (internal quotation marks and citations omitted).

Plaintiff has presented an affidavit from O.W. establishing that (1) D.J. did not accept the high school diploma that was offered to him; (2) D.J. had not obtain obtained the levels of skills commensurate with those of a high school graduate, as he had very limited reading and math skills; (3) Hartford continued to provide special education to D.J. for three years after the purported diploma was awarded; and (4) the stated reason for the termination of D.J.'s FAPE on June 30, 2016 was D.J.'s age, not the fact that he had been offered the diploma. O.W. Aff. II, ¶¶ 5, 6, 8, 9.

Plaintiff also conducted a deposition of Hartford Public Schools' 30(b)(6) designee, Dr. June Sellers. Dr. Sellers testified that all special education students awarded high school diplomas receive "regular high school diplomas" within the meaning of § 300.102(a)(3) of the IDEA regulations. Doc. 61-1 (Def.'s Ex. A) at 64:9-66:16. However, Dr. Sellers agreed that it was reasonably debatable whether the diploma issued to D.J. was "fully aligned" with state standards, as required by the IDEA. Doc. 57-6 (Kim Decl. I, Ex. D) at 78:16-80:25 & 92:7-93:12. Specifically, Dr. Sellers confirmed that, around the time D.J. exited special education, his reading skills were assessed as being at a third grade level and his math skills were assessed as being at a first grade level. *Id.* at 133:8-135:15. Dr. Sellers further testified that D.J. had been deemed by Hartford to be eligible to continue receive special education services even after the issuance of the diploma. *Id.* at 127:8-128:20. More generally, it was Hartford's position that meeting formal graduation requirements does not end eligibility for special education—rather, a student may defer

receipt of the diploma and continue to receive special education services until that student ages out of eligibility. *Id.* at 152:15-153:13.

Defendant's primary argument is that D.J. received a "regular high school diploma" prior to graduation within the meaning of § 300.102(a)(3) of the IDEA regulations. He therefore, Defendant contends, suffered no legally cognizable injury traceable to the Defendant because after graduation he had no right to a FAPE under federal or state law. "The mere fact that Hartford continued to provide D.J. with services is legally irrelevant." Doc. 61 (Def. Br.) at 5. Defendant also argues that "D.J.'s status puts him outside the scope of this complaint, and unable to receive compensatory education; because only special education students *who have not received a diploma* must be provided special education services in accordance with the IDEA requirements." *Id.*

At a minimum, the record raises triable issues of material fact as to D.J.'s Article III standing and his right to bring suit under the IDEA. On the one hand, there is no dispute that D.J. earned the necessary number of credits to graduate, and was offered a diploma through his high school. But other evidence that has emerged—most notably, Hartford's continued provision of educational services three years beyond D.J.'s purported graduation date, D.J.'s refusal of the diploma, and Dr. Sellers' admission that it was reasonably debatable whether the diploma issued to D.J. was "fully aligned" with state standards in light of D.J.'s low reading and math skills—raise triable issues of material fact as to whether D.J. was, in fact, awarded a "regular high school diploma" within the meaning of the IDEA regulations prior to filing suit. *See, e.g. Kevin T. v. Elmhurst Cmty. Sch. Dist. No. 205*, No. 01 C 0005, 2002 WL 433061, at *14 (N.D. Ill. Mar. 20, 2002) (rejecting school district's argument that disabled plaintiff had "graduated from high school with a regular high school diploma" where "the District's decision to graduate Kevin was based on his accumulation of required

8

credits and not based on his progress on his IEP goals and objectives").

We also note that all evidence before the Court indicates that D.J. received ten months less of special education than he would have if not for the Board's enforcement of the challenged state regulation. Specifically, O.W.'s affidavit and Dr. Sellers' deposition testimony indicate that D.J.'s access to a FAPE was terminated because he turned 21—*not* due to his purported high school diploma. This denial of services that Plaintiff otherwise would have received demonstrates injury for purposes of Article III standing, and is entirely traceable to the Board's enforcement of the regulation at issue. Additionally, Plaintiff's injury could be redressed by judicial action, such as granting Plaintiff's request for compensatory education.[6] Thus, Plaintiff has standing to bring the claims asserted in the Complaint.

### B. Leave to Amend

Having concluded that D.J. has standing, we must now determine whether Plaintiff should be permitted to amend the Complaint to substitute A.R. as a plaintiff. Federal Rule of Civil Procedure 15(a) instructs that leave to amend should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2). "Generally, amendments are favored because they 'tend to facilitate a proper decision on the merits.'" *Bernhard v. Cent. Parking Sys. of N.Y., Inc.*, 282 F.R.D. 284, 287 (E.D.N.Y. 2012) (quoting *Sokolski v. Trans Union Corp.*, 178 F.R.D. 393, 396 (E.D.N.Y. 1998)). However, leave to amend may properly be denied for undue delay, bad faith, repeated failure to cure pleading deficiencies, futility of amendment, or prejudice to the opposing party. *Foman v. Davis*, 371 U.S. 178, 182 (1962). The decision to allow a party to amend its pleadings falls within the

---

[6] When the Complaint was filed–the relevant time for purposes of our standing inquiry–Plaintiff's claims could also have been redressed through injunctive and declaratory relief. Thus, Plaintiff had standing for each form of relief sought.

district court's discretion. *Fisher v. Vassar Coll.*, 70 F.3d 1420, 1449 (2d Cir. 1995).

Defendant does not contest that Plaintiff acted diligently to identify and propose a substitute plaintiff after hearing the Court's concerns. The parties also appear to agree that little or no additional briefing or discovery will be necessary with respect to class certification or summary judgment—the issues in the Complaint and the proposed Amended Complaint are substantively identical. Instead, the gravamen of Defendant's argument is that the proposed class period would begin in 2015 if amendment were permitted, while denying the motion and requiring A.R. to file a new motion would start the class period in 2016. *See* Def. Br. at 6-7 (citing the two-year statute of limitations in IDEA § 615(f)(3) and 34 C.F.R. § 300.511(e)). Thus, "the compensatory education exposure for the Defendant would be roughly one year less than if the original complaint were allowed to be amended and proceed with a new plaintiff." Def. Br. at 6-7.

Defendant has provided no authority suggesting that the potential for increased liability can constitute undue prejudice, and we see no reason that it should—we "freely grant" discretionary motions to amend, notwithstanding the fact that they rarely seek to *narrow* the scope of liability. *See In re Osage Expl. Co.*, 104 F.R.D. 45, 49 (S.D.N.Y. 1984) (the fact that the amendment "might increase defendant's potential exposure to liability [is] not the type of prejudice that warrant[s] denial of leave to amend the complaint"); *Poloron Prod., Inc. v. Lybrand Ross Bros. & Montgomery*, 72 F.R.D. 556, 561 (S.D.N.Y. 1976) (defendant's argument that a proposed amendment's 1700% increase in requested damages should be considered prejudicial "could scarcely exert less force").

Defendant's argument is also flawed as a practical matter. This motion to amend has no direct effect on when the class period begins. If we grant the motion to amend, the proposed class period begins in 2015; if we were to deny the motion to amend, as Defendant requests, the proposed

class period would still begin in 2015—as it has for the pendency of this litigation. Defendant's argument relies on the major (and likely unwarranted)[7] assumption that denying this motion to amend would cause Plaintiff to voluntarily dismiss this Complaint, but we do not assess undue prejudice on the basis of down-the-line conjecture unrelated to the substance of the amendment being sought.

Defendant's underlying legal analysis regarding the statute of limitations is also likely incorrect. In *American Pipe & Construction Co. v. Utah*, 414 U.S. 538 (1974), the Supreme Court held that the commencement of a class action suspends the applicable statute of limitations as to all members of the putative class. *American Pipe* tolling would likely apply here, resulting in a statute of limitations going back to 2015 even if the Complaint were dismissed or class certification denied. *See, e.g., In re Nat'l Austl. Bank Sec. Litig.*, No. 03-CV-6537 (BSJ), 2006 WL 3844463, at *3 (S.D.N.Y. Nov. 8, 2006); *Monroe Cty. Emples.' Ret. Sys. v. YPF Sociedad Anonima*, 980 F. Supp. 2d 487, 490 (S.D.N.Y. 2013); *In re Initial Public Offering Sec. Litig.*, Nos. 21-92, 01-9741, 01-10899, 2004 WL 3015304, at *4-*5 (S.D.N.Y. Dec. 27, 2004).

On the other hand, there is good cause to permit amendment here. As discussed, Plaintiff's motion for class certification and the cross-motions for summary judgment are fully briefed and the parties agree as a general matter that the completed briefing will continue to apply. Re-litigating a substantively identical matter would be wasteful of the parties' and the Court's time and resources: this is the rare case in which permitting amendment is the *more* expeditious course of action.

Finally, we note that Plaintiff's claims for prospective and declaratory relief became moot

---

[7] If Plaintiff were denied leave to amend, given the Court's findings on standing it is far more likely that Plaintiff would wait for a ruling on the motion for summary judgment and motion for class certification that have already been briefed than voluntarily dismiss the Complaint.

when he turned twenty-two during the pendency of this litigation. Under these circumstances, courts have routinely held that adding a new representative is "appropriate, or even required," to protect the rights of the proposed class. *In re Gen. Motors LLC Ignition Switch Litig.*, No. 14-MC-2543 (JMF), 2017 WL 5504531, at *1 (S.D.N.Y. Nov. 15, 2017) (permitting amendment to replace named plaintiffs, whose claims had become moot or dismissed, with new plaintiffs in putative class action); *see also, e.g.*, *In re Nat'l Austl. Bank Sec. Litig.*, 2006 WL 3844463, at *3 ("[C]ourts not only may, but should, 'respond to the pre-certification mooting of a class representative's claims by permitting substitution of a new representative.'" (quoting *In re Thornburgh*, 869 F.2d 1503, 1509 (D.C. Cir. 1989))); *In re Currency Conversion Fee Antitrust Litig.*, No. M 21-95 (WHP), 2005 WL 3304605, at *3 (S.D.N.Y. Dec. 7, 2005) (finding that when a "class representative become inadequate, substitution of an adequate representative is appropriate to protect the interests of the class"); *In re Initial Pub. Offering Sec. Litig.*, No. 21 MC 92 (SAS), 2008 WL 2050781, at *2 (S.D.N.Y. May 13, 2008) ("[T]he procedure favored by the Second Circuit requires that where the named plaintiff is no longer an adequate representative of the class ... rather than decertifying the instant class on the ground that the named plaintiffs are no longer adequate representatives of the class, [the court should] afford[] plaintiffs' counsel a reasonable period of time for the substitution or intervention of a new class representative." (internal quotation marks and citations omitted)); *Clarkson v. Coughlin*, 783 F. Supp. 789, 795 (S.D.N.Y. 1992) ("Under the more 'flexible' approach applied to class claims, the complaint itself is not rendered moot merely because the named plaintiff's claim is moot. From the time a class action is filed until the time a final determination pursuant to Rule 23 is made, the action is treated as if the class existed for purposes of mootness. This provides unnamed members of the plaintiff class an opportunity to intervene in the action and to pursue their

claims." (citations omitted)); 1 *Newberg on Class Actions* § 2:26 (4th ed. 2006) ("When mootness of the named plaintiff's claims occurs, intervention by absentee members is freely allowed in order to substitute them as class representatives." (collecting cases)).[8]

## III. Conclusion

For the foregoing reasons, Plaintiff's Motion for Leave to File the Proposed Amended Complaint [Doc. 57] is GRANTED retroactively. The previously filed Amended Complaint [Doc. 57-4] becomes the operative complaint in this action.

**It is SO ORDERED.**

Dated: New Haven, Connecticut
April 5, 2019

/s/ *Charles S. Haight, Jr.*
CHARLES S. HAIGHT, JR.
Senior United States District Judge

---

[8] Plaintiff's brief discusses the standing of proposed replacement plaintiff A.R. at length, Pl. Br. at 6-10, and Defendant does not contest A.R.'s standing. For purposes of accepting the proposed Amended Complaint, Plaintiff has adequately alleged standing.