**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**

|  |  |
|---|---|
| A.R., on behalf of a class of those similarly situated, | |
| Plaintiff, | 3:16–cv–01197 (CSH) |
| v. | |
| CONNECTICUT STATE BOARD OF EDUCATION, | **MAY 1, 2020** |
| Defendant. | |

**RULING ON PLAINTIFF'S MOTION TO CERTIFY CLASS**

**HAIGHT, Senior District Judge**:

Plaintiff A.R., an individual with a disability, brings this putative class action pursuant to Federal Rule of Civil Procedure 23(b)(2) against Connecticut State Board of Education, alleging that the Board's enforcement of age limitations to special education established by Conn. Gen. Stat. § 10-76d(b) and Conn. Agencies Reg. § 10-76d-1(a)(4) violates the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. § 1412(a).  Several motions are pending before the Court, including Plaintiff's renewed motion for class certification, and the parties' cross motions for summary judgment. The instant ruling resolves Plaintiff's renewed motion for class certification.

1

## I.  BACKGROUND

Defendant Connecticut State Board of Education ("Defendant" or the "Board") maintains "general supervision and control" of elementary and secondary education, special education, and adult education in the state of Connecticut.  Conn. Gen. Stat. § 10-4(a).  As the educational agency responsible for general supervision of special education in Connecticut, the Board is also responsible for ensuring the state's compliance with the requirements of the federally enacted Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1412.

Plaintiff A.R.[1] is an individual with a disability who turned 21 years old on April 7, 2020. *See* Doc. 66-8 ("Decl. A.R."), ¶ 2.  In November 2014, A.R. began receiving special education from West Hartford Public School district.  *Id.* at ¶ 4.  Due to various disability-related issues, A.R. was able to earn only 5.625 credits towards her high school diploma by November 2017. *Id.* at ¶ 5.  Since then, A.R. has been earning additional credits at Options Employment and Education Services, LLC ("Options").  *See id.*  Nevertheless, A.R. anticipates that she will not be able to earn the credits needed to receive her high school diploma before her eligibility for special education terminates in June 2020, at the end of the school year during which A.R. turns 21.  *See id.* at ¶¶ 6–10.

A.R.'s eligibility to receive special education will terminate pursuant to Connecticut statute and regulations, which provide that a child with a disability, who turns 21 during the school year, is entitled to receive special education only until the end of that school year.  *See* Conn. Gen. Stat. § 10-76d(b); Conn. Agencies Reg. § 10-76d-1(a)(4).

---

[1] A.R. was substituted as plaintiff and purported class representative in place of former plaintiff D.J., acting through his parent O.W., pursuant to the Court's April 5, 2019 Ruling, 2019 WL 1499377.

A.R. contends that the Board's enforcement of this age limitation violates the IDEA, which obligates a state to provide a free appropriate public education to children with disabilities until the age of 22 if the state also provides public education to non-disabled persons of the same age. *See* Am. Compl. ¶¶ 43–51 (citing 20 U.S.C. § 1412(a)(1)(B)). A.R. asserts that, because the Board generally provides public education to non-disabled persons regardless of their age, the Board must also provide special education to individuals with disabilities between ages of 21 and 22. *Id.*

A.R. brings this action against the Board on behalf of herself and a class of similarly situated individuals defined as follows:

> All individuals who were over 21 and under 22 within two years before the filing of this action or will turn 21 during the pendency of this action who are provided or were provided a [free appropriate public education] under the IDEA by any [Local Education Agency] in the State of Connecticut and who, but for turning 21, would otherwise qualify or would have qualified for a [free appropriate public education] until age 22 because they have not or had not yet earned a regular high school diploma ("the Class").

Doc. 66-1 ("P.'s Br."), at 3.

A.R., on behalf of the Class, seeks a declaratory judgment that Conn. Gen. Stat. § 10-76d(b) and Conn. Agencies Reg. § 10-76d-1(a)(4) violate the IDEA because "[t]here is no Connecticut law or regulation that imposes an age limitation of 21 on the entitlement to public education generally"—rather, the age limitation "appl[ies] only to special education students" and does not apply to "non-special education students" who may continue to receive public education as adults. *See* Am. Compl. ¶¶ 30–32, 51(c). Plaintiff requests a declaration that the Board's current or future refusal to provide a free appropriate public education to Plaintiff and the members of the Class on account of their age violates the IDEA. *Id.* ¶ 51(a), (b). Plaintiff

also seeks to enjoin the Board from terminating a free appropriate public education as to Plaintiff and the members of the Class who have not yet turned 22.  *Id.* ¶ 51 (d).

Additionally, Plaintiff, who believes that she would meaningfully benefit from receiving special education until she turns 22,[2] requests the Court to "[a]ward compensatory education to members of the Plaintiff Class to the extent they have already been denied a [free appropriate public education] unlawfully."  *Id.* ¶ 51(e).  Plaintiff also seeks an award of reasonable attorney's fees, costs and expenses. *Id.* ¶ 51(f).

## II.  DISCUSSION

### (A)  Applicable Substantive Law

A state receiving federal funds under the IDEA must provide "a free appropriate public education"[3] to children with disabilities "between the ages of 3 and 21, *inclusive*."  *See* 20 U.S.C. § 1412(a)(1)(A) (emphasis added); 34 C.F.R. § 300.101(a).  Interpreting this language, the Second Circuit concluded that children with disabilities are entitled to receive a free appropriate public education until the day they turn 22.  *See Lillbask ex rel. Mauclaire v. State of Conn. Dep't. of Educ.*, 397 F.3d 77, 86 n.4 (2d Cir. 2005) ("We have interpreted the word 'inclusive,' in this provision, to indicate that a child remains eligible for a free appropriate education under IDEA until his 22nd birthday."); *St. Johnsbury Acad. v. D.H.*, 240 F.3d 163, 168–69 (2d Cir. 2001) ("If the word 'inclusive' is to mean something, as it must, it means that the relevant period

---

[2] Plaintiff believes that she would need six or eight months of additional special education services to complete the credits requirement.  Decl. A.R. at ¶¶ 9–10.

[3] A free appropriate public education (sometimes abbreviated as FAPE) is defined as special education and related services that "have been provided at public expense, under public supervision and direction, and without charge," "meet the standards of the State educational agency," "include an appropriate preschool, elementary school, or secondary school education in the State involved," and "are provided in conformity with the individualized education program."  *See* 20 U.S.C. § 1401(9).

begins on a child's third birthday and ends on the last day of his 21st year (which culminates in his 22nd birthday)."); *see also K.L. v. Rhode Island Bd. of Educ.*, 907 F.3d 639, 641 (1st Cir. 2018) (the IDEA eligibility continues until a child with disability turns 22); *L.A. Unified Sch. Dist. v. Garcia*, 669 F.3d 956, 959 (9th Cir. 2012) (children eligible to receive services under the IDEA "are entitled to continue receiving those services until they turn twenty-two").[4]

Despite this mandate, a state need not provide a free appropriate public education to children with disabilities ages 18 to 21 if doing so would conflict with "State law or practice" regarding "the provision of public education to children in those age ranges." *See* 20 U.S.C. § 1412(a)(1)(B)(i); 34 C.F.R. § 300.102(a)(1). Thus, a state may deny a free appropriate public education to children with disabilities ages 18 through 21 only to the extent it denies "public education" to non-disabled individuals of the same age. *See K.L.*, 907 F.3d at 642 (holding that Rhode Island Board of Education violated the IDEA by denying special education to individuals with disabilities between ages of 21 and 22 while providing public education services to non-disabled individuals of the same age); *E.R.K. ex rel. R.K. v. Hawaii Dep't of Educ.*, 728 F.3d 982, 987 (9th Cir. 2013) (holding that Hawaii Department of Education violated the IDEA by denying special education to disabled individuals ages 20 to 21 while providing adult secondary education programs to non-disabled persons of the same age); *see also St. Johnsbury Acad.*, 240 F.3d at 169–70 (noting that New York, unlike Vermont, was not required to provide special education to individuals between ages of 21 and 22 because New York law offered "public education" only to persons "under twenty-one years of age," while Vermont law did not specify

---

[4] *But see Board of Educ. v. Illinois State Bd. Of Educ.*, 79 F.3d 654, 656 (7th Cir. 1996) ("the [IDEA] entitles disabled individuals to special education assistance only until they reach the age of 21").

an "upper age limit" on public education) (citing *Burr v. Ambach*, No. 86 Civ. 7164, 1987 WL 19957, at *1 (S.D.N.Y. Nov. 10, 1987)).

Under Connecticut law, each child with a disability is entitled to special education until that child "is graduated from high school or reaches age twenty-one, *whichever occurs first*." (emphasis added) .  *See* Conn. Gen. Stat. § 10-76d(b).  A child who turns 21 during the school year will continue to receive special education until the end of that school year.  *See* Conn. Agencies Reg. § 10-76d-1(a)(4).[5]

**(B)  Class Action Certification**

To be certified, a class must satisfy the requirements set forth in Rule 23(a), which include numerosity, commonality, typicality, and adequacy of representation.  *See* Fed. R. Civ. P. 23(a)(1)–(4); *Glatt v. Fox Searchlight Pictures, Inc.*, 811 F.3d 528, 538 (2d Cir. 2016). Additionally, when seeking certification under Rule 23(b)(2), a plaintiff must establish that the defendant "acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).

Rule 23 "does not set forth a mere pleading standard"—rather, a plaintiff must satisfy its requirements through "evidentiary proof."  *See Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013); *see also Amara v. CIGNA Corp.*, 775 F.3d 510, 519 (2d Cir. 2014) (stating that a plaintiff must establish Rule 23 requirements by "a preponderance of the evidence").  To determine whether a plaintiff has done so, a district court must conduct a "rigorous analysis" that may "overlap with the merits of the plaintiff's underlying claim." *See Comcast*, 569 U.S. at 33.

---

[5] For purposes of this regulation, the school year runs from July 1 through June 30.  Conn. Agencies Reg. § 10-76d-1(a)(4).

When presented with the parties' conflicting evidentiary submissions, a district court may make factual findings to resolve the evidentiary disputes.  *See Jacob v. Duane Reade, Inc.*, 602 Fed. Appx. 3, 5 (2d Cir. 2015) (summary order)*.*

Notably, Defendant has not filed any objection to Plaintiff's renewed motion for class certification.  Nor have the parties stipulated that Defendant's briefing in opposition to Plaintiff's first motion for class certification should continue to apply to Plaintiff's renewed motion.[6]  Even if such stipulation existed, however, Defendant could hardly continue to advance the arguments raised in its opposition to Plaintiff's first motion for class certification.  *See* Doc. 33.  These arguments, which contended that former plaintiff D.J. was not an adequate class representative and lacked standing to bring the purported class action because he had already received a high school diploma,[7] became moot in light of the Court's April 5, 2019 Ruling, 2019 WL 1499377, which allowed the purported class to file an amended complaint substituting A.R. as the named plaintiff and class representative in place of D.J.[8]

Defendant has raised no arguments that A.R. is an inadequate class representative, or that the purported class fails to meet any other Rule 23 requirements.  Nor has Defendant contested A.R.'s standing.[9]  *See* April 5, 2019 Ruling, 2019 WL 1499377, at *6 n.8.

---

[6] By contrast, the parties expressly stipulated that the briefing filed in support of their original cross-motions for summary judgment will continue to apply to the renewed cross-motions for summary judgment.  *See* Doc. 65.

[7] While Defendant briefed this issue as one of mootness, the Court noted that the issue of whether D.J. could properly bring this action after receiving a high school diploma was one of standing.  *See* April 5, 2019 Ruling, 2019 WL 1499377.

[8] The Court also found that D.J. had standing to bring the instant lawsuit in the first place.  *See* April 5, 2019 Ruling, 2019 WL 1499377, at *4.

[9] Regardless, A.R. has sufficiently demonstrated standing to bring this class action.  To establish Article III standing, "a litigant must demonstrate that it has suffered a concrete and particularized injury that is either actual or imminent, that the injury is fairly traceable to the defendant, and that it is likely that a

Even in the absence of opposition, however, it is still Plaintiff's duty to "affirmatively demonstrate" that a purported class complies with Rule 23 requirements. *See Comcast*, 569 U.S. at 33. In accordance with this principle, the Court will examine below whether class certification should be granted.

### (1) Rule 23(a) Requirements

#### a. Numerosity

To be certified, the class must be so numerous that joinder of all members would be "impracticable." Fed. R. Civ. P. 23(a)(1). Numerosity is generally presumed when a class consists of forty or more members. *See Pennsylvania Pub. Sch. Emps.' Ret. Sys. v. Morgan Stanley & Co.*, 772 F.3d 111, 120 (2d Cir. 2014); *Morrison v. Ocean State Jobbers, Inc.*, 290 F.R.D. 347, 353 (D. Conn. 2013). A named plaintiff need not prove the exact number or identity of proposed class members, as long as the size of the class can be reasonably estimated. *See Scott v. Aetna Servs., Inc.*, 210 F.R.D. 261, 266 (D. Conn. 2002); *see also Fogarazzao v. Lehman Bros., Inc.*, 232 F.R.D. 176, 179 (S.D.N.Y. 2005) (explaining that "precise calculation of the number of class members is not required, and it is permissible for the court to rely on reasonable inferences drawn from available facts").

---

favorable decision will redress that injury." *Massachusetts v. E.P.A.*, 549 U.S. 497, 517 (2007) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)). A.R.'s alleged injury—the denial of a free appropriate public education by the Board in violation of the IDEA—is imminent because it is "certainly impending," rather than merely "speculative." *See Clapper v. Amnesty Intern USA*, 568 U.S. 398, 409 (2013) (citing *Lujan*, 504 U.S. at 564 n.2). Under the existing Connecticut statute and regulations, the Board will inevitably deny A.R. special education on June 30, 2020, at the end of the school year during which A.R. turns 21. *See* Conn. Gen. Stat. § 10-76d(b); Conn. Agencies Reg. § 10-76d-1(a)(4). Indeed, as recounted in A.R.'s November 26, 2019 Declaration, on November 8, 2019, the hearing officer in the due process matter filed by A.R. against the Board held that, pursuant to Conn. Agencies Reg. § 10-76d-1(a)(4), A.R.'s education cannot be extended past the end of the school year during which A.R. turns 21. *See* Doc. 67, Decl. A.R. ¶ 5. Additionally, a favorable decision will redress A.R.'s alleged injury because the result of a favorable decision would be an order enjoining the Board from terminating A.R.'s education pursuant to the IDEA until A.R. turns 22.

In the instant case, Plaintiff seeks to certify a class that includes all individuals "who were over 21 and under 22 within two years before the filing of this action" in July 2016, as well as those who "will turn 21 during the pendency of this action," if such individuals, "but for turning 21," would have qualified for receiving services under the IDEA in the state of Connecticut until reaching the age of 22.[10]   The data compilation produced by the Board shows that, in 2014 and 2015 alone, 204 Connecticut students stopped receiving special education services under the IDEA because they reached the age of 21.[11]   As Plaintiff correctly notes, this number "more than satisfies the numerosity requirement with respect to the Class even without consideration of class members who aged out [of the IDEA eligibility] in 2016 through 2018 and future class members."  *See* P.'s Br. at 7; *see also Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir. 1993) (accounting for potential future class members in the determination of numerosity).   Nor does Defendant dispute that the purported class is sufficiently numerous.   Therefore, the class satisfies the numerosity requirement.

### b.  Commonality

A class will not be certified unless there are "questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).   Such questions exist if the class members "suffered the same injury" and their claims "depend upon a common contention," which can be resolved through a class-wide proceeding.  *See Wal-Mart Stores, Inc v. Dukes*, 564 U.S. 338, 350 (2011) (internal citations omitted); *Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 80 (2d Cir. 2015).   The common contention must be of such nature "that determination of its truth or falsity will resolve

---

[10] P.'s Br. at 3.

[11] *See* Docs. 66-7; P.'s Br. at 7.

an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S. at 350.

The central issue in this litigation is whether Conn. Gen. Stat. § 10-76d(b) and Conn. Agencies Reg. § 10-76d-1(a)(4) are sufficient to override the IDEA's default age requirements and release the Board from its obligation to provide a free appropriate public education to children with disabilities until they reach the age of 22. This issue turns on whether providing special education to children with disabilities until the age of 22 would be inconsistent with any Connecticut law or practice regarding providing public education to non-disabled individuals of the same age. *See* 20 U.S.C. § 1412(a)(1)(B)(i); *K.L.*, 907 F.3d at 642; *E.R.K.*, 728 F.3d at 987.

Here, Plaintiff's contention is that the Board must provide a free appropriate public education to children with disabilities until the age of 22 because the Board generally provides public education to non-disabled individuals regardless of age. Specifically, Plaintiff points to Conn. Gen. Stat. § 10-69(a), which requires the Board to "establish and maintain a program of adult classes . . . for its adult residents," including "secondary school completion programs." Eligibility for such programs is not limited on the basis of age—in fact, the statute defines an adult as "any person seventeen years of age or older." *See* Conn. Gen. Stat. § 10-67(1). As the Board confirmed during the deposition of its designated 30(b)(6) representative Susan Pierson, every Local Educational Agency ("LEA") in Connecticut is required to offer some form of adult education. *See* Exh. A to Kim Decl. at 43:4–17. Such education must be provided to adults free of tuition or registration fees. Conn. Gen. Stat. § 10-73a(a).

Among the adult education programs supervised by the Board, Plaintiff lists the General Educational Development Program ("GED"), the National External Diploma Program ("NEDP"), and the Adult High School Credit Diploma Program ("AHSCD"). *See* Exh. C to

Kim Decl.  As the Statewide Profile Report for 2016 suggests, more than 16,000 adults enrolled in these programs were over the age of 22.  *See* Exh. B to Kim Decl. at 1.

Plaintiff asserts that GED, NEDP, and AHSCD constitute "public education" because these programs: (1) are almost entirely publicly funded from the federal, state and local sources, (2) are provided by the LEAs and supervised by the Board, and (3) allow participants to attain a high school diploma.  *See id.*; Exh. A to Kim Decl., 33:3–11; 46:1–9; & 55:15–56:1; *see also K.L.*, 907 F.3d at 647–48 (noting that the core attributes of public education include "(1) significant funding from a public source;" "(2) public administration or oversight;" and "(3) the education of students to the academic competence ordinarily associated with completion of secondary school"); *E.R.K.*, 728 F.3d at 988 (stating that "free public education is one that is 1) provided at public expense, under public supervision and direction, and without charge; and 2) involves preschool, elementary, or secondary education") (internal quotation marks omitted). Plaintiff's characterization of GED, NEDP and AHSCD as programs providing public education for adults is largely corroborated by the testimony of the Board's designated 30(b)(6) representative.  Exh. A to Kim Decl., 33:3–11; 46:1–9; & 55:15–56:1.

Relying on this evidence, Plaintiff contends that the Board generally provides public education to non-disabled individuals over the age of 21.  For that reason, Plaintiff asserts that the Board's enforcement of Conn. Gen. Stat. § 10-76d(b) and Conn. Agencies Reg. § 10-76d-1(a)(4), which deny a free appropriate public education to children with disabilities before they reach the age of 22, violates the IDEA.

It is evident that A.R.'s contention is common to all members of the purported class, which encompasses individuals in the state of Connecticut who—but for turning 21— would have qualified for a free appropriate public education under the IDEA until reaching the age of

22. Plaintiff A.R. and the members of the purported class are necessarily complaining of the same alleged injury—being denied special education services by the Board upon turning 21 despite the Board's practice of providing public education to non-disabled individuals of the same age. Indeed, any difference in the class members' individual circumstances would have practically no effect on the determination of the Board's liability because the alleged "acts and omissions" of the Board "are not specific to any particular Plaintiff" but are directed at the entire class of disabled individuals over the age of 21. *See Raymond v. Rowland*, 220 F.R.D. 173, 180 (D. Conn. 2004) ("While the details of each individual plaintiff's alleged injury may vary, the predominant issues of fact and law include plaintiffs' disability, defendants' alleged reduction of [services] and the alleged resulting denial of meaningful and timely access to public assistance.") (internal citation omitted).

The common question, central to the validity of each class member's claim in this litigation, is whether the Board's enforcement and application of Conn. Gen. Stat. § 10-76d(b) and Conn. Agencies Reg. § 10-76d-1(a)(4) violate the IDEA in light of the Board's practices regarding the provision of public education in general. If this Court finds that the Board generally provides public education to non-disabled individuals over the age of 21, it would follow that the Board's enforcement of Conn. Gen. Stat. § 10-76d(b) and Conn. Agencies Reg. § 10-76d-1(a)(4) violates the IDEA. *See E.R.K.*, 728 F.3d at 984 (concluding that Hawaii Department of Education violated the IDEA by denying special education to disabled individuals between ages of 20 and 22 because Hawaii provided public education to non-disabled individuals of the same age in the form of state-funded high school diploma programs); *K.L.*, 907 F.3d at 642 (holding that Rhode Island Board of Education violated the IDEA by denying special education to individuals with disabilities between ages of 21 and 22 because it provided

public education services to non-disabled individuals of the same age).  Because a class action would necessarily "generate common answers" central to the resolution of each class member's claim, the commonality requirement is satisfied.  *See Dukes*, 564 U.S. at 350.

### c.  Typicality

A class will not be certified unless the claims or defenses of the named plaintiff  "are typical of the claims and defenses of the class."  Fed. R. Civ. P. 23(a)(3).  A named plaintiff's claims are typical of those of the class when they arise from "the same course of events,"[12] such as a common policy or practice directed at the class.  *See Westchester Indep. Living Ctr., Inc., v. State Univ. Of New York, Purchase Coll.*, 331 F.R.D. 279, 293–94 (S.D.N.Y. 2019); *Maziarz v. Hous. Auth. of the Town of Vernon*, 281 F.R.D. 71, 82 (D. Conn. 2012) (citing *Robidoux*, 987 F.2d at 937);   *Morgan v. Metropolitan Dist. Com'n*, 222 F.R.D. 220, 230 (D. Conn. 2004).

Additionally, the claims of the named plaintiff and the class must require "similar legal arguments to prove the defendant's liability."  *See Audet v. Fraser*, 332 F.R.D. 53, 67 (D. Conn. 2019) (citing *Robinson v. Metro-N. Commuter R.R. Co.*, 267 F.3d 147, 155 (2d Cir. 2001)); *see also Lemire v. Wolpoff & Abramson, LLP*, 256 F.R.D. 321, 326 (D. Conn. 2009) ("The typicality element is distinct from commonality in that typicality focuses on '*claims or defenses*,' rather than on 'questions of law or fact.") (emphasis in the original).

Here, the claims of A.R. and other class members arise from the same common policy and general practice by the Board— a failure to provide a free appropriate public education to class members until they reach the age of 22.  *See Robidoux*, 987 F.2d at 936–37 ("When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor

---

[12]  *Scott*, 210 F.R.D. at 267.

variations in the fact patterns underlying individual claims.").  The claims asserted by A.R. and the class members necessarily require the same legal arguments to prove the Board's liability—that the Board's practice violates the IDEA because providing special education to class members until they reach the age of 22 is not inconsistent with any Connecticut law or practice, as the Board generally provides public education programs to non-disabled individuals of the same age.

For these reasons, A.R.'s claim is typical of the claims of the class.

### d.  Adequacy

A named plaintiff must "fairly an adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  To do so, a plaintiff must establish that her interests are not "antagonistic" to the interest of other class members.  *See Audet*, 332 F.R.D. at 67 (citing *Baffa v. Donaldson, Lufkin & Jenrette Secs. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000)).  Additionally, a plaintiff must be represented by counsel that is "qualified, experienced and able to conduct the litigation."  *Id.*

The Court finds no conflict between the interests of A.R. and the interests of other class members.  Indeed, all members of the purported class, including A.R., share an identical interest—establishing that they are entitled to receive a free appropriate public education under the IDEA until they reach the age of 22.

Furthermore, A.R. is represented by qualified and experienced counsel.  One of these is Jason H. Kim, with the firm of Schneider Wallace Cottrell Konecky Wotkyns LLP.  Attorney Kim served as counsel for plaintiff classes in similar IDEA litigations before the Unites States Court of Appeals for the Ninth Circuit, *E.R.K.*, 728 F.3d at 982, and the United States Court of Appeals for the First Circuit, *K.L.*, 907 F.3d at 639.  *See* Kim. Decl. at ¶ 2.  In addition to the *E.R.K.* and *K.L.* matters, Mr. Kim has substantial experience in representing plaintiffs with

14

disabilities in federal civil rights and public benefit matters, including litigations under the Americans With Disabilities Act and Rehabilitation Act. *See id.* at ¶ 4. A.R. is also represented by the Law Offices of Sonja L. Deyoe, P.C. and Disability Rights Connecticut, "an organization with deep expertise and knowledge of special education in Connecticut." *See* P.'s Br. at 9–10.

For these reasons, the Court is assured that A.R. will fairly and adequately protect the interests of the class.

### (2)  Certification under Rule 23(b)(2)

A class may be certified under Rule 23(b)(2) if the defendant "acted or refused to act on grounds that apply generally to the class" so that "a single injunction or declaratory judgment would provide relief to each member of the class." *See Dukes*, 564 U.S. at 360 (citing Fed. R. Civ. P. 23(b)(2)). By contrast, a (b)(2) class may not be certified if "each individual class member would be entitled to a *different* injunction or declaratory judgment against the defendant." *Id.* (emphasis in the original). Nor may a (b)(2) class include claims for individualized monetary relief unless such claims are "merely incidental to the injunctive or declaratory relief sought."[13] *See Gale v. Chicago Title Ins. Co.*, 929 F.3d 74, 76–77 (2d Cir. 2019) (citing *Dukes*, 564 U.S. at 360). In essence, "claims for *individualized* relief . . . do not satisfy the Rule." *Dukes*, 564 U.S. at 360 (emphasis in the original).

For these reasons, Rule 23(b)(2) "is most commonly relied upon by litigants seeking institutional reform" through class-wide declaratory or injunctive relief. *See Stinson v. City of New York*, 282 F.R.D. 360, 379 (S.D.N.Y. 2012) (internal citations omitted). For example,

---

[13] Prior to the Supreme Court's decision in *Dukes*, many courts, including the Second Circuit, maintained that the relief sought by a 23(b)(2) class may include claims for individualized monetary damages, as long as such claims do not "predominate" over the claims for class-wide injunctive or declaratory relief. *See Robinson*, 267 F.3d at 169–70. *Dukes*, however, meaningfully narrowed the scope of Rule 23(b)(2).

certification under Rule 23(b)(2) is appropriate when a plaintiff seeks to enjoin a "systemic failure" on the part of a governmental body or public entity to comply with statutory requirements. *See, e.g.*, *Westchester Indep. Living Ctr.*, 331 F.R.D. at 300 (certifying a Rule 23(b)(2) class of individuals with mobility disabilities alleging that the state university failed to comply with the requirements set forth in the Americans with Disabilities Act and Rehabilitation Act); *Brooklyn Ctr. for Indep. of the Disabled v. Bloomberg*, 290 F.R.D. 409, 412, 420 (S.D.N.Y. 2012) (certifying a Rule 23(b)(2) class of individuals with disabilities alleging that the City of New York systemically failed to address the needs of disabled persons in the City's emergency and disaster planning in violation of the Americans with Disabilities Act and Rehabilitation Act).

In the instant case, the Board's alleged practice—denial of special education to disabled individuals between ages of 21 and 22 despite providing public education to non-disabled persons of the same age—constitutes a "systemic failure" to comply with the IDEA's statutory requirements. *See Westchester Indep. Living Ctr.*, 331 F.R.D. at 300; *Brooklyn Ctr. for Indep. of the Disabled*, 290 F.R.D. at 420.   Because this practice stems from the age limitations established by Connecticut statute and regulations, the Board's alleged violation of the IDEA is "institutional," rather than "merely a cumulation of individual cases."  *See Westchester Indep. Living Ctr.*, 331 F.R.D. at 300.   To remedy the Board's failure to comply with the IDEA, the class seeks the following injunctive and declaratory relief:

> (a) Find and declare that the Board's current or future refusal to provide Plaintiff A.R. and the members of the Plaintiff Class with [a free and appropriate public education] on account of their age violates the IDEA;
>
> (b) Find and declare that, by this conduct, the Board has violated 20 U.S.C. § 1407 and 20 U.S.C. § 1412(11);

16

(c) Find and declare that Conn. Gen. Stat. § 10-76d(b) and Conn. Agencies Reg.§ 10-76d-1(a)(4) are invalid as contrary to the IDEA;

(d) Enjoin the Board from terminating [a free and appropriate public education] as to Plaintiff A.R. and the members of the Plaintiff Class who have not yet turned 22;

(e) Award compensatory education to members of the Plaintiff Class to the extent they have already been denied [a free and appropriate public education] unlawfully.[14]

Here, claims (a), (b), (c), and (d) may be properly certified under Rule 23(b)(2) because they seek a class-wide injunctive and declaratory judgment aimed at remedying the Board's systemic failure to comply with the IDEA requirements.  If granted, a declaration that the applicable Connecticut statute and regulations and the Board's enforcement of these laws violate the IDEA, and an injunction prohibiting the Board from terminating the class members' special education, would provide relief to each member of the class.  *See Dukes*, 564 U.S. at 360. Indeed, these claims are exactly the types of claims for which Rule 23(b)(2) certification was designed.  *See id.* at 361; *Westchester Indep. Living Ctr.*, 331 F.R.D. at 300; *Stinson*, 282 F.R.D. at 379; *Brooklyn Ctr. for Indep. of the Disabled*, 290 F.R.D. at 420.

However, whether the class members' claims for compensatory education may be similarly certified under Rule 23(b)(2) is a more complex question.  Neither Plaintiff, nor the Board suggest that the class members' compensatory education claims do not belong in a (b)(2) class—indeed, the Board, by failing to address this issue either on the present motion or in its opposition to Plaintiff's first motion for class certification, has essentially conceded that certification under Rule 23(b)(2) is proper.  Despite a lack of briefing, a class may not be certified unless it satisfies every requirement of Rule 23.  *See Comcast*, 569 U.S. at 33.

---

[14] Am. Compl. ¶ 51(a)–(f).

17

Compensatory education is an award of educational services designed to remedy "any earlier deprivations in the child's education." *See Doe v. East Lyme Bd. of Educ.*, 790 F.3d 440, 456 (2d Cir. 2015) (compensatory education "requir[es] a school district to fund education beyond the expiration of a child's eligibility"); *Brennan v. Reg'l Sch. Dist. No. 1 Bd. of Educ.*, 531 F. Supp. 2d 245, 264–65 (D. Conn. 2008) (compensatory education is "a prospective award of educational services designed to catch-up the student to where he should have been absent the denial of a [free appropriate public education]"). Compensatory education is distinct from an award of damages[15] and constitutes "discretionary, prospective, injunctive relief" that is equitable in nature. *See Reid ex rel. Reid v. Dist. of Columbia*, 401 F.3d 516, 523 (D.C.C. 2005); *Ms. M. ex rel. K.M. v. Portland Sch. Comm.*, 360 F.3d 267, 273–74 (1st Cir. 2004); *G. ex rel. RG v. Fort Bragg Dependent Schs.*, 343 F.3d 295, 309 (4th Cir. 2003); *Dervishi v. Stamford Bd. of Educ.*, No. 3:11-cv-01018 (WWE), 2018 WL 8967297, at *14 (D. Conn. Apr. 18, 2018) (quoting *Reid*, 401 F.3d at 524); *East Lyme Bd. of Educ.*, 790 F.3d at 454, 456.

Plaintiff contends that, because compensatory education is an equitable remedy akin to an injunction and distinct from monetary damages, claims for compensatory education may be certified pursuant to Rule 23(b)(2).[16] However, not all claims for equitable or injunctive relief belong in a (b)(2) class. *See Dukes*, 564 U.S. at 365 (noting that the "equitable" nature of the remedy is "irrelevant" to the Rule 23(b)(2) inquiry). Rather, certification is appropriate "only when a single injunction . . . would provide relief to each member of the class." *Id.* at 360. By

---

[15] *See, e.g.*, *East Lyme Bd. of Educ.*, 790 F.3d at 454 (distinguishing between "[a]n award of damages," which is "not available" under the IDEA, and "various forms of retroactive and prospective equitable relief" that are recoverable under the IDEA, "including reimbursement of tuition [and] compensatory education") (internal citations omitted).

[16] *See* P.'s Br. at 10.

contrast, "claims for *individualized* relief"—such as "when each individual class member would be entitled to a *different* injunction" against the defendant—"do not satisfy the Rule."[17]   *Id.* (emphases in the original).   Therefore, the pertinent inquiry is whether the class members' compensatory education claims seek class-wide or "individualized" relief .   *Id.*

In the instant case, the class members are not requesting a class-wide injunction that would equally affect each member of the class—for example, an injunction directing the Board to develop a common remedial plan aimed at providing compensatory education or other appropriate relief to affected individuals.   *Cf. Brooklyn Ctr. for Indep. of the Disabled*, 290 F.R.D. at 412, 420 (certifying a Rule 23(b)(2) class of individuals with disabilities seeking "an injunction requiring the City [of New York] to develop and implement an emergency preparedness program that addresses the unique needs of people with disabilities").   Rather, the class asks the Court to "*award* compensatory education to members of the Plaintiff Class *to the extent* they have already been denied a [free and appropriate public education] unlawfully."   *See* Am. Compl. ¶ 51(e) (emphasis added).

Awards of compensatory education necessarily constitute individualized relief.   Under the IDEA, each child with a disability must receive special educational services in accordance with an "*individualized* education program" (IEP).   *See* 20 U.S.C. § 1401(9)(D) (emphasis added).   Such program, created by the educational agency, must be "tailored for the particular needs of the child" and must be "reasonably calculated to enable the child to receive educational benefits."   *See Bryant v. New York State Educ. Dep't*, 692 F.3d 202, 207–08 (2d Cir. 2012)

---

[17] The *Dukes* court noted that this interpretation of the scope of Rule 23(b)(2) "accords with the history of the Rule."  564 U.S. at 361.  Specifically, "[i]n none of the cases cited by the Advisory Committee as examples of (b)(2)'s antecedents did the plaintiffs combine any claim for individualized relief with their classwide injunction."  *Id.* at 361 (citing Advisory Committee's Note, 28 U.S.C. App., pp. 1260–1261 (1964 ed., Supp. II).

(citing *Bd. of Educ. v. Rowley*, 458 U.S. 176, 207 (1982)); *see also East Lyme Bd. of Educ.*, 790 F.3d at 448 (stating that the individualized educational plans must "specify[] the educational needs of the handicapped child and the specially designed instruction and related services to be employed to meet those needs") (internal citations and quotation marks omitted).

For this reason, designing an equitable award of compensatory education "requires a flexible, case-by-case approach." *Willington Bd. of Educ. v. G.W.*, No. 3:15-cv-00614 (MPS), 2015 WL 4164876, at *11 (June 15, 2015); *see also Reid*, 401 F.3d at 524 (stating that "amount of compensatory education appropriate in [the plaintiff]'s case cannot be determined as a matter of law" because "designing [the plaintiff]'s remedy will require a fact-specific exercise of discretion by either the district court or a hearing officer"). A compensatory education award must be tailored to the child's "current" educational needs and account for the possibility that such needs might have changed since the commencement of the litigation. *See East Lyme Bd. Of Educ.*, 790 F.3d at 457 ("Given the possibility that the Student's educational needs have changed since the commencement of proceedings, we leave to the district court whether compensatory education should be limited to the kinds of services specified in the amended 2008–2009 IEP, or encompass analogous educational services appropriate to the Student's current needs.").

Therefore, although the class members' claims arise from the same alleged violation of the IDEA, compensatory education awards, which turn on each child's individual circumstances, constitute individualized injunctive relief that is distinct from a single, uniform injunction that Rule 23(b)(2) envisions. *Cf. Gulino v. Bd. of Educ. of City Sch. Dist. of New York*, 907 F. Supp. 2d 492, 507–08 (S.D.N.Y. 2012) (holding that claims for individualized injunctive relief—namely, claims for injunctions providing teaching certificates and affording seniority rights and other non-monetary benefits to class members under Title VII—do not belong in a

(b)(2) class); *Easterling v. Connecticut Dep't. Of Corr.*, 278 F.R.D. 41, 47, 51 (D. Conn. 2011) (modifying an earlier class certification order because the plaintiff's claims for "individualized injunctive relief"—including requests for an "order restoring Plaintiff and Class members to their rightful positions at Department of Correction, as applicants or employees"—could not be certified under Rule 23(b)(2)).

Furthermore, an award of compensatory education might not adequately address the injury of every class member, because the relief needed to remedy the Board's denial of services may differ depending on each class member's individual circumstances. Plaintiff's proposed class encompasses individuals that were denied services under the IDEA upon turning 21 between two years from the filing of this action in 2016 and the present. The individual circumstances and educational needs of at least some of these individuals may have changed since the commencement of this litigation. Specifically, while an award of compensatory education may constitute a complete remedy for those class members that did not continue their education after the Board's denial of services, class members that were able to continue their education by enrolling in private special education programs might wish to seek reimbursement of their tuition expenses.[18] *See, e.g.*, *Forest Grove Sch. Dist. V. T.A.*, 557 U.S. 230, 247 (2009) ("IDEA authorizes reimbursement for private special-education services when a public school fails to provide a [free and appropriate public education] and the private-school placement is appropriate, regardless of whether the child previously received special-education services

---

[18] Though not addressed by Plaintiff, reimbursement of tuition is another equitable remedy available under the IDEA that is distinct from compensatory education or an award of monetary damages. *See East Lyme Bd. Of Educ.*, 790 F.3d at 454 (distinguishing between an award of damages and equitable remedies of compensatory education and reimbursement of tuition); *Sch. Comm. of Burlington v. Dep't of Educ.*, 471 U.S. 359, 370–71 (1985) ("the Town repeatedly characterizes reimbursement [for educational services] as 'damages,' but that simply is not the case. Reimbursement merely *requires* the Town to belatedly pay expenses that it should have paid all along and would have borne in the first instance had it developed a proper IEP") (emphasis added).

through the public school"); *Burr v. Ambach*, 863 F.2d 1071, 1078 (2d Cir. 1988) ("a parent can enroll a child in a private placement and then recover the tuition paid by the parent during the proceedings against the school board, if the proceedings ultimately establish that the parent's placement was appropriate."); *Burlington*, 471 U.S. at 370 ("we are confident that by empowering the court to grant 'appropriate' relief Congress meant to include retroactive reimbursement [for educational costs] to parents as an available remedy in a proper case") (internal citations omitted).

Class members' ability to refuse compensatory education and seek other remedies, however, would be curtailed by the mandatory nature of Rule 23(b)(2). Because the rule envisions relief that "must perforce affect the entire class at once," it does not permit class members to exclude themselves from the class "and does not even oblige the District Court to afford them notice of the action." *Dukes*, 564 U.S. at 361–62. Indeed, because of this lack of procedural protections, the *Dukes* court reasoned that "[p]ermitting the combination of individualized and classwide relief in a (b)(2) class is . . . inconsistent with the structure of Rule 23(b)." *Id.* at 361. Because the Court is certain that class members should receive notice and have an opportunity to opt out from a class that seeks to award compensatory education to each class member regardless of their educational needs, certification under Rule 23(b)(2) is simply not appropriate.[19]

---

[19] Indeed, following the Ninth Circuit's decision in *E.R.K.*, 728 F.3d at 982, holding that Hawaii's denial of special education to individuals ages 20 and 21 violated the IDEA, the district court on remand ordered identification and notice to potential class members eligible for compensatory education, recognizing that some of these individuals might wish to opt out of the class. *See* 2014 WL 12887631, at *1–2 (D. Haw. Aug. 22, 2014) (ordering identification and notice); 2016 WL 2930893, at *1, 5 (D. Haw. May 19, 2016) (stating that the list of potential class members eligible for compensatory education should account for "individuals who have expressly declined to be in the class" and noting that Hawaii need not "begin providing compensatory services until after the final list of class members has been submitted" ).

However, the Court sees no reason why the class members' compensatory education claims may not be separately certified under Rule 23(b)(3), which "allows class certification in a much wider set of circumstances" and guarantees "greater procedural protections." *Dukes*, 564 U.S. at 362. Unlike a (b)(2) class, a (b)(3) class may be certified where a class suit, though not mandatory, is "convenient and desirable." *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615 (1997). Because a (b)(3) class is not mandatory, its members are entitled to receive notice of the action and may elect to withdraw from the class. *Dukes*, 564 U.S. at 362 (citing Fed. R. Civ. P. 23(c)(2)(B)).

Certifying a separate class for compensatory education claims is consistent with Rule 23(c)(4)(A), which allows a court to create classes "with respect to particular issues." *See* Fed. R. Civ. P. 23(c)(4)(A). Indeed, the Second Circuit has encouraged district courts to "take full advantage of [Rule 23(c)(4)] to certify separate issues in order to reduce the range of disputed issues in complex litigation and achieve judicial efficiencies." *Robinson*, 267 F.3d at 167. On another occasion, the Second Circuit has indicated that a court may properly employ Rule 23(c)(4) "to separate the issue of liability from damages." *See In re Nassau Cty. Strip Search Cases*, 461 F.3d 219, 226 (2d Cir. 2006) (internal citations omitted).

Following this guidance, many district courts have certified claims for class-wide declaratory or injunctive relief under Rule 23(b)(2), while simultaneously certifying claims for individualized relief under Rule 23(b)(3). *See, e.g.*, *Easterling*, 278 F.R.D. at 51 (modifying an earlier class certification order in light of *Dukes*, so that "the plaintiff's claims for class-wide declaratory and injunctive relief are certified under Rule 23(b)(2), while the plaintiff's claims for monetary and individualized injunctive relief are certified under Rule 23(b)(3)"); *Maziarz*, 281 F.R.D. at 83 (stating that "[*Dukes*] did not reject the *Robinson* court's interpretation of Rule

23

23(c)(4)" and that "it is consistent with [*Dukes*] for the court, in an appropriate situation, to certify an 'injunction class' under Rule 23(b)(2) and a 'damages class' under Rule 23(b)(3)"); *Gulino*, 907 F. Supp. 2d at 507–08 (decertifying a (b)(2) class as to the claims for individualized injunctive relief under Title VII in light of *Dukes,* but noting that such claims may be separately certified under (b)(3)); *see also U.S. v. City of New York*, 276 F.R.D. 22, 34 (E.D.N.Y. 2011) ("The Second Circuit's interpretation of Rule 23(c)(4) is consistent with [*Dukes*]'s interpretation of Rule 23(b).").

Accordingly, despite Plaintiff's failure to seek certification of compensatory education claims under Rule 23(b)(3), the Court will consider whether these claims may be so certified. *See* Edward F. Sherman, *Class Actions and Duplicative Litigation*, 62 Ind. L.J. 507, 516 (1987) ("[a] class action should not be found unmanageable without [first] exploring the procedural devices available for bringing it in line. These include subclassing and trial of subclass issues separately, bifurcating liability and damages, ... [and] appointing a special master for difficult evidentiary matters").

### (3)  Certification of Compensatory Education Claims under Rule 23(b)(3)

When seeking certification under Rule 23(b)(3), a plaintiff must establish that "questions of law or fact common to class members predominate over any questions affecting only individual members," and "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  *See In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 117 (2d Cir. 2013) (quoting Fed. R. Civ. P. 23(b)(3)).

### a.  Predominance

Common issues predominate "if resolution of some of the legal or factual questions that qualify each member's case as a genuine controversy can be achieved through generalized proof,

and if these particular issues are more substantial than the issues subject only to individualized proof."  *See Myers v. Hertz Corp.*, 624 F.3d 537, 547 (2d Cir. 2010).   Issues subject to generalized proof generally predominate "when liability can be determined on a class-wide basis, even when there are some individualized damage issues."  *Maziarz*, 281 F.R.D. at 84 (quoting *In re Visa Check/ MasterMoney Antitrust Litig.*, 280 F.3d 124, 139 (2d Cir. 2001)); *see Macarz v. Transworld Sys., Inc.*, 193 F.R.D. 46, (D. Conn. 2000) ("if the liability issue is common to the class, common questions are held to predominate over individual questions.") (internal quotation marks omitted).  A class action is particularly appropriate where the plaintiffs are allegedly aggrieved by a single policy of the defendants.  *See Strip Search Cases*, 461 F.3d at 228.

Here, questions of law or fact common to the class predominate over any questions affecting only individual class members.  The class members' compensatory education claims depend on several common questions of law and fact including: (1) whether the Board is required under the IDEA to provide a free appropriate public education to class members until the age of 22 despite the age limitations established by Connecticut statute and regulations, (2) whether the Board generally provides public education to non-disabled individuals in the same age group, and (3) whether the Board's alleged violation of the IDEA obliges it to provide compensatory education to class members.  These questions, which determine the Board's liability, can be resolved on a class-wide basis through generalized proof and do not depend on class members' individual circumstances.

As repeatedly acknowledged by courts in this circuit, where liability "can be determined on a class-wide basis," an existence of "some individualized damage issues" does not defeat certification.  *See In re Visa Check*, 280 F.3d at 139; *see also Macarz*, 193 F.R.D. at 54 ("While

25

damage amounts may vary, the claims of the class present the same legal theories based on identical facts such that common questions clearly predominate."). In the instant case, although compensatory education awards may require individualized determinations, the underlying questions of liability and the class members' entitlement to compensatory education do not depend on the class members' individual circumstances. Rather, these questions center on the Board's conduct directed at the class as a whole. Indeed, before awarding compensatory education, as a threshold matter, the Court may need to determine whether the Board's alleged violation constitutes a "gross" violation of the IDEA. *See, e.g.*, *East Lyme Bd. of Educ.*, F.3d at 456 n.15 (suggesting that the remedy of compensatory education "is unavailable to a claimant over the age of twenty-one in the absence of gross procedural violations") (citing *Garro v. State of Conn.*, 23 F.3d 734, 737 (2d Cir. 1994)).

Accordingly, the Court finds that issues common to the class predominate over any issues affecting only individual class members.

### b. Superiority

To determine whether a class action is a superior method of adjudicating the controversy, the Court must consider the following factors: "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3).

In the instant case, the interests of the class members—disabled students who might find it difficult to pursue their claims individually— would be best served by a single class action. This Court is a desirable forum for litigating the class members' compensatory education claims

because a parallel class action seeking class-wide declaratory and injunctive relief would also be pending before the Court. Furthermore, just as it would be inefficient to have several hundred class members separately litigate the question of the Board's liability, it would be inefficient to have these class members separately litigate their entitlement to compensatory education arising out of the Board's class-wide denial of services under the IDEA.

Allowing the claims for compensatory education to proceed as a class action would also promote the uniformity of decision as to all class members affected by the Board's failure to provide special education to individuals with disabilities between ages of 21 and 22. *See Amchem Prods.*, 521 U.S. at 615 (stating that Rule 23(b)(3) is intended "to cover cases in which a class action would achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results") (quoting Advisory Committee's Notes on Rule 23(b)(3)).

Finally, because the Court may turn to case-managing devices, such as appointment of a special master to handle any individual elements of class members' claims, "any difficulties likely to arise in managing this class action . . . are far less daunting than the difficulties involved in litigating over a hundred separately captioned actions." *See Easterling*, 278 F.R.D. at 50; *see also City of New York*, 276 F.R.D. at 49 ("In deciding whether class certification will achieve substantial efficiencies, the proper comparison is not between class litigation and no litigation at all, but between class litigation and actions conducted separately by individual class members."); *Strip Search Cases*, 461 F.3d at 231 ("The District Court should bear in mind that "[t]here are a number of management tools available to a district court to address any individualized damages issues," such as bifurcation, the use of a magistrate or special master, alteration of the class definition, the creation of subclasses, or even decertification after a finding of liability.").

27

For these reasons, the Court finds that certification of the class members' compensatory education claims is superior to other available methods for fairly and efficiently adjudicating the controversy.  A class action would "achieve economies of time, effort, and expense" for all parties to this litigation.  *See Amchem Prods.*, 521 U.S. at 615.

Because both predominance and superiority requirements are satisfied, certification under Rule 23(b)(3) is appropriate.

### (4)  Classes are Certified pursuant to Rules 23(b)(2) and 23(b)(3)

Accordingly, the Court certifies the class members' claims for class-wide injunctive and declaratory relief under Rule 23(b)(2).  The Court also certifies the class members' claims for compensatory education under Rule 23(b)(3).  Both classes are defined as follows:

> All individuals who were over 21 and under 22 within two years before the filing of this action or will turn 21 during the pendency of this action who are provided or were provided a FAPE under the IDEA by any [Local Education Agency (LEA)] in the State of Connecticut and who, but for turning 21, would otherwise qualify or would have qualified for a FAPE until age 22 because they have not or had not yet earned a regular high school diploma.

In accordance with Rule 23(g), the Court appoints Attorney Jason H. Kim of Schneider Wallace Cottrell Konecky Wotkyns LLP, The Law Offices of Sonja L. Deyoe P.C., and Disability Rights Connecticut as counsel for both classes.  As discussed earlier in this Opinion, counsel collectively possess the expertise, knowledge and experience needed to adequately represent the classes in this litigation.  *See* Fed. R. Civ. P. 23(g) (when appointing class counsel, the district court should consider, among other factors, counsel's experience in handling class actions with similar types of claims and counsel's knowledge of the applicable law).

28

## III.  CONCLUSION

For the foregoing reasons, Plaintiffs' claims for class-wide injunctive and declaratory relief are certified under Rule 23(b)(2), and Plaintiffs' claims for compensatory education are certified under Rule 23(b)(3).

It is **SO ORDERED**.

Dated:          May 1, 2020
                New Haven, Connecticut

                                        ___ */s/ Charles S. Haight, Jr.* ____
                                        CHARLES S. HAIGHT, JR.
                                        United States Senior District Judge