MANDATE

# UNITED STATES COURT OF APPEALS
## FOR THE
## SECOND CIRCUIT

At a Stated Term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 8th day of July, two thousand twenty-one.

Before:     Amalya L. Kearse,
            José A. Cabranes,
            Joseph F. Bianco,
                *Circuit Judges.*

_____

A. R., on behalf of a class of those similarly situated,

        Plaintiff - Appellee,

v.

Connecticut State Board of Education,

        Defendant - Appellant.

_____

**JUDGMENT**

Docket No. 20-2255

The appeal in the above captioned case from a judgment of the United States District Court for the District of Connecticut was argued on the district court's record and the parties' briefs. Upon consideration thereof,

IT IS HEREBY ORDERED, ADJUDGED and DECREED that the judgment of the district court is AFFIRMED.

For the Court:
Catherine O'Hagan Wolfe,
Clerk of Court

A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit

MANDATE ISSUED ON 07/30/2021

20-2255
A.R. v. Connecticut
State Board of Education

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

- - - - - -

August Term, 2020

(Argued:  April 12, 2021                    Decided: July 8, 2021)

Docket No. 20-2255

_____

A.R., on behalf of a class of those similarly situated,

*Plaintiff-Appellee,*

- v. -

CONNECTICUT STATE BOARD OF EDUCATION,

*Defendant-Appellant.**

_____

---

\*       The Clerk of Court is instructed to amend the official caption to
        conform with the above.

Before:  KEARSE, CABRANES, and BIANCO, *Circuit Judges*.

Appeal from a judgment of the United States District Court for the District of Connecticut, Charles S. Haight, Jr., *Judge*, which (A) declared defendant Connecticut State Board of Education (the "Board") to be in violation of the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1412(a)(1), 1407, and 1412(11), for denying a free appropriate public education ("FAPE") to disabled students between the ages of 21 and 22 while providing a free public education to nondisabled students in the same age range, and (B) permanently enjoined the Board and its successors, employees, and agents, etc., from terminating, on the basis of age, FAPEs for plaintiff class members who have not received a regular high school diploma before they reach the age of 22.  *See A.R. v. Connecticut State Board of Education*, 3:16-cv-01197, 2020 WL 3086032 (D. Conn. June 10, 2020).  On appeal, the Board contends principally that the district court (1) should have dismissed the complaint on the ground that the original plaintiff lacked standing to bring the action, and (2) erred in interpreting the IDEA term "public education" to encompass free adult education programs offered by the State of Connecticut.  Finding no basis for reversal, we affirm.

Affirmed.

- 2 -

JASON H. KIM, Emeryville, California (Schneider Wallace Cottrell Konecky, Emeryville, California; Kasey Considine, Disability Rights Connecticut, Inc., Hartford, Connecticut, on the brief), *for Plaintiff-Appellee*.

DARREN P. CUNNINGHAM, Assistant Attorney General, Hartford, Connecticut (William Tong, Attorney General of the State of Connecticut, Clare E. Kindall, Solicitor General, Hartford, Connecticut on the brief), *for Defendant-Appellant*.

KEARSE, *Circuit Judge*:

Defendant Connecticut State Board of Education (the "Board"), which is responsible for general supervision and control of elementary and secondary education, special education, and adult education in the State of Connecticut ("State" or "Connecticut"), and is responsible for ensuring the State's compliance with the requirements of the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.*, appeals from a judgment of the United States District Court for the District of Connecticut, Charles S. Haight, Jr., *Judge*, which (A) declared that the Board violated the rights of plaintiff class members under IDEA, 20 U.S.C. §§ 1412(a)(1), 1407, and 1412(11), by denying a free appropriate public education ("FAPE") to

- 3 -

disabled students between the ages of 21 and 22 while providing a free public education to nondisabled students in the same age range, and (B) permanently enjoined the Board and its successors, employees, and agents, etc., from terminating, on the basis of age, FAPEs for plaintiff class members who have not received a regular high school diploma before they reach the age of 22. On appeal, the Board contends principally that the district court (1) should have dismissed the original complaint ("Complaint") on the ground that the original plaintiff lacked standing to bring the action, and (2) erred in interpreting the IDEA term "public education" to encompass free adult education programs offered by the State. Finding no basis for reversal, we affirm.

# I. BACKGROUND

IDEA is designed to "ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living." 20 U.S.C. § 1400(d)(1)(A). The term "free appropriate public education"—FAPE—means, *inter*

- 4 -

*alia*, "special education and related services that . . . have been provided at public expense, under public supervision and direction, and without charge"; that "meet the standards of the State educational agency"; and that "include an appropriate preschool, elementary school, or secondary school education in the State involved." *Id*. § 1401(9). However, "[t]he obligation to make FAPE available to all children with disabilities does not apply with respect to . . . . [c]hildren with disabilities who have graduated from high school with a regular high school diploma." 34 C.F.R. § 300.102(a)(3)(i).

States accepting federal funds under IDEA are required to provide a FAPE to "all children with disabilities . . . between the ages of 3 and *21, inclusive*." 20 U.S.C. § 1412(a)(1)(A) (emphasis added). "[T]he word 'inclusive' . . . means that the relevant period begins on a child's third birthday and ends on the last day of his 21st year (which culminates in his 22nd birthday)." *St. Johnsbury Academy v. D.H.*, 240 F.3d 163, 168 (2d Cir. 2001); *see, e.g., Lillbask ex rel. Mauclaire v. State of Connecticut Department of Education*, 397 F.3d 77, 86 n.4 (2d Cir. 2005) ("*Lillbask*") ("a child remains eligible for a [FAPE] under IDEA until his 22nd birthday").

By statute, Connecticut law provides that, in accordance with Board regulations, local and regional boards of education are required to "[p]rovide special

education for school-age children requiring special education," but that that "obligation . . . shall terminate when such child is graduated from high school *or reaches age twenty-one, whichever occurs first*." Conn. Gen. Stat. § 10-76d(b) (emphasis added). By regulation, if "the child turns twenty-one during th[e] school year," his or her special education is to be "continued until the end of th[at] school year." Conn. Agencies Reg. § 10-76d-1(a)(4).

In this class action, the plaintiff class members are individuals with disabilities who were or are receiving special education in Connecticut and who, under the above State-law provisions, were, or are threatened to be, denied further special education after the end of the school term in which they reach 21 years of age. Plaintiffs contend that these provisions of Connecticut law violate IDEA, asserting that "[t]here is no Connecticut law or regulation that imposes an age limitation of 21 on the entitlement to public education generally"; rather, the age limitation "appl[ies] only to special education students" and does not apply to "non-special education students" who may continue to receive public education as adults. (Amended Complaint ¶¶ 30-32, Prayer for Relief ¶ (c).)

The course of this action has been described in several decisions of the district court, familiarity with which is assumed. The action was commenced in 2016

as *D.J. through O.W. v. Connecticut State Board of Education*, 3:16-cv-01197 (D. Conn. Complaint, July 15, 2016), by D.J.'s mother on his behalf and on behalf of all similarly situated to him, *see, e.g., D.J. through O.W. v. Connecticut State Board of Education*, 3:16-cv-01197, 2018 WL 1461895 (D. Conn. Mar. 23, 2018) ("*D.J. v. Board I*"). The Complaint alleged that D.J. "turned 21 years old on May 29, 2016," that he was denied a continuation of his FAPE "because he had reached the age of 21 during the school year that ended on June 30, 2016," and that he "ha[d] not received a high school diploma." (Complaint ¶¶ 2, 19.) In 2019 the district court, after having raised *sua sponte* a question as to whether D.J. had  standing to bring the action, *see D.J. v. Board I*, 2018 WL 1461895, at *2—*see* Part II.A. below—answered that question affirmatively based on information developed in discovery, *see D.J. through O.W. v. Connecticut State Board of Education*, 3:16-cv-01197, 2019 WL 1499377, at *4 (D. Conn. April 5, 2019) ("*D.J. v. Board II*"). The court then granted a motion by D.J. for leave to file an Amended Complaint—which both sides agreed asserted essentially the same IDEA claims—with A.R. rather than D.J. as the named plaintiff. *See id*. at *5. In 2020, the court granted A.R.'s motion for class certification, certifying as the class

> [a]ll individuals who were over 21 and under 22 within two years before the filing of this action or will turn 21 during the pendency of this action who are provided or were provided a

FAPE under the IDEA by any [Local Education Agency (LEA)] in the State of Connecticut and who, but for turning 21, would otherwise qualify or would have qualified for a FAPE until age 22 because they have not or had not yet earned a regular high school diploma.

*A.R. v. Connecticut State Board of Education*, 3:16-cv-01197, 2020 WL 2092650, at *14 (D. Conn. May 1, 2020) ("*A.R. v. Board I*").

Thereafter addressing motions by each side for summary judgment, the court denied the Board's motion and granted that of the plaintiffs. *See A.R. v. Connecticut State Board of Education*, 3:16-cv-01197, 2020 WL 3086032 (D. Conn. June 10, 2020) ("*A.R. v. Board II*"). As discussed in greater detail in Part II.B. below, the court found that Connecticut, through its adult education programs, provides free public education, within the meaning of IDEA, to nondisabled individuals over the age of 21; and it thus violates IDEA when it terminates, on the basis of age, the FAPE of a disabled individual before the age of 22. *See id*. Judgment was entered enjoining the Board from terminating, prior to his or her 22nd birthday, any class member's special education based on the State's age limitation:

The current or future *refusal* of Defendant Connecticut Board of Education to provide Plaintiff A.R. and the members of the Class a free appropriate public education *pursuant to the age limitations established* by Conn. Gen. Stat. § 10-76d(b) and Conn.

Agencies Reg. § 10-76d-1(a)(4) *violates the IDEA*, 20 U.S.C. §§ 1412(a)(1), 1407, and 1412(11). . . .

Accordingly, pursuant to Rule 65(d) of the Federal Rules of Civil Procedure, and in accordance with Rule 58(a), it is hereby ADJUDGED and ORDERED that the Defendant, its successors in office, agents, servants, employees, and attorneys, and those in active concert and participation with any of the foregoing who receive actual notice of this Order are:

PERMANENTLY ENJOINED from terminating a free appropriate public education as to Plaintiff A.R. and the members of the Class before they reach the age of 22.

Permanent Injunction Judgment and Order, July 10, 2020 (emphases added).

In addition, the court found that the State's systemic denial of FAPEs to disabled individuals between the ages of 21 and 22, which for some of them resulted in a complete exclusion from the educational placement to which they were entitled, constituted a gross violation of IDEA, and one that was not remediable by ordinary injunctive relief. *See A.R. v. Board II*, 2020 WL 3086032, at \*17. Accordingly, the court ordered that class members so severely affected were awarded compensatory education. The court referred to a magistrate judge such tasks as identifying the class members who should receive that relief. *See id*.

## II. DISCUSSION

On appeal, the Board contends principally (1) that D.J. lacked standing to bring this action, and the district court therefore lacked jurisdiction to allow the Complaint to be amended and A.R. to be substituted for D.J. as the plaintiff and class representative; and (2) that the district court erred in interpreting the IDEA term "public education" to encompass free adult education programs offered by Connecticut. The Board also contends that it was an abuse of discretion for the court to order that any class members be provided with compensatory education. Finding no basis for reversal, we affirm substantially for the reasons stated by the district court in *D.J. v. Board II*, 2019 WL 1499377, and *A.R. v. Board II*, 2020 WL 3086032.

A. *The Decision on Standing*:  D.J. v. Board II

The question of D.J.'s standing to bring the present action in 2016 was raised by the district court *sua sponte* in 2018.  D.J. had moved for certification of a class of special education students who had not received a regular high school diploma and who would otherwise have qualified to continue receiving a FAPE but for turning 21; and he had moved for summary judgment.  In support of his motion

for summary judgment, D.J.'s mother, O.W., submitted an affidavit in which she stated, *inter alia*, that "D.J. earned a diploma from Hartford Public High School in or about 2013.  However, he continued to receive educational and related services from Hartford Public High School until or about June 30, 2016."  (Affidavit of O.W. dated September 13, 2017 (O.W.'s "September Affidavit"), ¶ 5.)  The Board opposed D.J.'s motions on the ground that his 2013 receipt of a high school diploma made his claims moot.  The district court noted that the issue was not mootness but was rather—if indeed D.J. received a regular high school diploma in 2013—whether he lacked standing to bring this action in 2016.  *See D.J. v. Board I*, 2018 WL 1461895, at *3.

In reply to the Board's mootness argument, O.W. had submitted a second affidavit, stating, *inter alia*, as follows:

> Officials at Hartford High School *offered* D.J. a high school diploma from Hartford Public High School in or about 2013. *When D.J was offered this diploma, as his guardian, I refused to accept it*.  D.J. was taking programs through Hartford High School . . . . *I was told that if D.J. accepted the diploma he would not be able to continue with those programs*.  I understood that the diploma was kept in the school office.

> 6.  Even though Hartford High School said that he could graduate, I knew that he had not learned any skills that would allow him to live independently or to support himself. He did not know how to ride the bus or read a bus schedule.  He did not know the meaning of money or how to count money.  I do not

-11-

know how he was able to pass algebra and geometry if he could not even count money. Reading is also difficult and overwhelming. He may be able to read the words, but that does not mean that he understands the meaning of what he read.

. . . .

8. Although the school officials purported to award D.J. a diploma in 2013 as indicated above, he continued to receive educational and related services from Hartford Public High School until on or about June 30, 2016. . . .

9. D.J. was exited from Special Education on or about June 30, 2016, after he turned 21. *He left Hartford Public Schools because they told us that he had gotten too old to receive services from the school system.*

(Affidavit of O.W. dated October 19, 2017 (O.W.'s "October Affidavit"), ¶¶ 5-6, 8-9 (emphases added).)

The district court observed that the record was insufficient to determine whether D.J. had received "'a regular high school diploma,' as that phrase is used in § 300.102(a)(3) of the IDEA regulations." *D.J. v. Board I*, 2018 WL 1461895, at *3. It thus invited discovery on the issues as to D.J.'s standing to bring the present action, *see id*. at *4, including whether a regular Hartford High School diploma "was awarded," *id*. at *3.

The discovery that followed consisted of deposition testimony by Dr. June M. Sellers, an official of the Hartford Board of Education. On the basis of the augmented record, the district court concluded that D.J. had had standing in 2016 to bring the action. The court's discussion included the following:

> *At a minimum*, the record raises triable issues of material fact as to D.J.'s Article III standing and his right to bring suit under the IDEA. On the one hand, there is no dispute that D.J. earned the necessary number of credits to graduate, and was offered a diploma through his high school. But other evidence that has emerged—most notably, Hartford's continued provision of educational services three years beyond D.J.'s purported graduation date, D.J.'s refusal of the diploma, and Dr. Sellers' admission that it was reasonably debatable whether the diploma issued to D.J. was "fully aligned" with state standards in light of D.J.'s low reading and math skills—raise triable issues of material fact as to whether D.J. was, in fact, awarded a "regular high school diploma" within the meaning of the IDEA regulations prior to filing suit.

*D.J. v. Board II*, 2019 WL 1499377, at *4 (emphasis added).

The Board contends that the district court erred by concluding that D.J. had standing to bring this action merely because there were "triable issues," and that it was "[o]n the basis of this factual *conflict* [that] the district court concluded that D.J. ha[d] standing." (Board brief on appeal at 12 (internal quotation marks omitted (emphasis in brief))). But this argument disregards (a) the procedural posture in

-13-

which the standing issue was presented, (b) the factual findings by the court, and (c) the augmented record.

First, the standing issue—previously mischaracterized by the Board as an issue of mootness—was raised in the Board's motion for summary judgment, *see*, *e.g., D.J. v. Board I*, 2018 WL 1461895, at *1, *3. In *D.J. v. Board II*, the court noted that the Board's "primary argument" in support of that jurisdictional ground of its motion was "that D.J. [had] received a 'regular high school diploma' prior to graduation within the meaning of § 300.102(a)(3) of the IDEA regulations"; and the court stated—pertinently to the Board's motion for summary judgment—that "[a]t a *minimum*, the record raises *triable issues of material fact* as to D.J.'s Article III standing." 2019 WL 1499377, at *4 (emphases added). The court elaborated that the "debatable" question was whether the diploma for D.J. was "fully aligned with state standards in light of D.J.'s low reading and math skills," *i.e.*, "whether D.J. was, in fact, awarded a 'regular high school diploma' within the meaning of the IDEA regulations prior to filing suit." *Id*. (other internal quotation marks omitted). Thus, the Board's motion for summary judgment, based on the assertion that D.J. undisputedly had in fact received a regular diploma, could not be granted.

-14-

Second, the district court did not suggest that it found D.J. to have had standing based on a "factual *conflict*" (Board brief on appeal at 12 (emphasis in brief)). In contrast to the "debatable" issues as to whether reading skills at the third-grade level and math skills at the first-grade level "aligned" with standards for the issuance of a regular high school diploma, the court found that certain events and treatment of D.J. were "establish[ed]":

> Plaintiff has presented an affidavit from O.W. establishing that (1) *D.J. did not accept the high school diploma that was offered to him*; (2) D.J. . . . had very limited reading and math skills; (3) *Hartford continued to provide special education to D.J. for three years after the purported diploma was awarded*; and (4) *the stated reason for the termination of D.J.'s FAPE on June 30, 2016 was D.J.'s age, not the fact that he had been offered the diploma*.

*D.J. v. Board II*, 2019 WL 1499377, at *3 (emphases added). The court did not suggest that these facts were debatable—and for good reason: Those assertions in O.W.'s October Affidavit were confirmed by Dr. Sellers.

Preliminarily, we note that although the Board states categorically that "[t]he deposition of Dr. Sellers . . . made clear that D.J. *did in fact receive* a regular high school diploma by virtue of earning enough credits to graduate" (Board brief on appeal at 47 (emphasis added)), the only testimony the Board quotes to support that statement (a) deals only with Dr. Sellers's understanding of possible variations in

types of diplomas, and (b) contains no reference to D.J. (*see id*.). In fact the record, including the deposition of Dr. Sellers, shows only that D.J. did not receive a high school diploma and in fact deferred receiving it.

Dr. Sellers testified as a general matter that although "student[s] with a disability" who "have met graduation requirements and are . . . eligible to take receipt of their diploma" are allowed "to walk across the stage with their graduating class,"

> *they are able to defer the receipt of their diploma in order to continue to receive special education and related services*, transition and vocational services through FAPE *until they age out*.

(Deposition of Dr. June Sellers ("Sellers Dep.") at 153 (emphases added).) Indeed, not only may there be an immediate decision to "defer" (*id.; see also id*. at 166-67), but "the Hartford Public Schools" also allow a diploma to be "brought . . . back" "if a parent changes their mind; if a student takes their diploma and then says, wait, you know, I really want to continue to receive services through FAPE" (*id*. at 168-69).

Further, as to D.J. in particular, Dr. Sellers's deposition testimony—aside from placing the offer of a diploma to D.J. in 2014 rather than 2013 (*see, e.g., id*. at 126-27)—did not contradict O.W.'s October Affidavit. While Dr. Sellers stated that D.J. had had sufficient credits to graduate from high school in 2014, she testified that the school records showed that in January 2015 (D.J. was then 19 years of age) D.J.

-16-

was reading at only a third-grade level, and that his math skills were at a first-grade level (*see id*. at 133-35).

Dr. Sellers also identified a school document reflecting a January 29, 2015 meeting of D.J.'s IDEA Planning and Placement Team ("PPT") with respect to his individualized educational program ("IEP"); the document showed that D.J. was scheduled for another IEP meeting on January 27, 2016; and it had the "Yes" box checked as to whether D.J. was "[e]ligible as a student in need of Special Education." Dr. Sellers testified that the document showed that D.J. was "continuing to receive special education services," that it "look[ed] like . . . an annual [PPT] review," and it "mean[t] that they continued to meet eligibility criteria for a particular disability program." (Sellers Dep. 127-28.) She testified that "[i]t could also mean that they are able to continue to receive services through FAPE *because of the deferment of their diploma*." (*Id*. at 128 (emphasis added).)

Dr. Sellers thereafter confirmed that D.J.'s FAPE was indeed continued after such a deferment. She indicated that she had spoken to persons who were on the Hartford High School staff in 2014. She did not state exactly what had transpired with respect to documentation of a diploma for D.J. "But," she stated, "in talking to

-17-

the staff, *they were able to verbally give their recollection of the decision to defer*." (*Id.* at 166-67 (emphasis added).)

In sum, O.W. in her October Affidavit stated that she had rejected the high school's offer to give D.J. a diploma. And Dr. Sellers testified that disabled students were allowed to defer receipt of a diploma; that a 2015 document showed that D.J. continued to be eligible for his FAPE either generally or because his diploma had been deferred; and that the school staff recalled that in 2014 D.J.'s receipt of a diploma had been deferred.

The Board has not pointed to anything in the record controverting the evidence that D.J.'s receipt of a diploma was deferred, and that D.J. therefore did not receive a high school diploma. It is thus immaterial whether the diploma proffered to him would have been a "regular high school diploma" or one "fully aligned with State standards" within the meaning of 34 C.F.R. § 300.102(a)(3). There was no genuine issue as to whether D.J. received a high school diploma; all of the evidence presented showed that he did not, because he exercised his right to defer. The district court did not err in finding that

> O.W.'s affidavit and Dr. Sellers' deposition testimony indicate that D.J.'s access to a FAPE was terminated because he turned 21—*not* due to his purported high school diploma.

-18-

*D.J. v. Board II*, 2019 WL 1499377, at *4 (emphasis in original).

The district court having noted that "Article III standing consists of three 'irreducible constitutional minimum[s],'" *id*. at *3 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)), to wit, a "concrete and particularized injury" to the plaintiff, that is "fairly traceable to the defendant," and that is "redress[able]" in the action, *D.J. v. Board II*, 2019 WL 1499377, at *3 (quoting *Massachusetts v. E.P.A.*, 549 U.S. 497, 517 (2007)), the court correctly found that D.J. satisfied each criterion. It found that "all evidence before the Court indicates that D.J. received ten months less of special education than he would have if not for the Board's enforcement of the challenged state regulation," thereby demonstrating "injury for purposes of Article III standing." *D.J. v. Board II*, 2019 WL 1499377, at *4. It found that the injury "[wa]s entirely traceable to the Board's enforcement of the regulation at issue," *id*.; and it found that the injury "could be redressed by judicial action, such as granting Plaintiff's request for compensatory education" and that at the time the action was filed, D.J.'s injury could have been "redressed through injunctive and declaratory relief," *id*. & n.6. The ruling that D.J. had standing to bring the action is affirmed.

-19-

B. *The Ruling on the Merits*:  A.R. v. Board II

Having found that D.J. had standing to bring the action, the district court granted his motion for permission to file the Amended Complaint, in which A.R. is the named plaintiff.  The parties agreed that their respective motions for summary judgment on the merits of the action could be decided on the basis of the papers previously submitted.

Plaintiffs contended that they were entitled to summary judgment on the basis that Connecticut local educational agencies are required to provide some form of adult public education, including three programs—the General Educational Development Program ("GED"), the National External Diploma Program ("NEDP"), and the Adult High School Credit Diploma Program ("AHSCD")—that allow participants to attain a high school diploma.  Plaintiffs contended that Connecticut violates IDEA by denying special education to disabled students who have not received high school diplomas and who are between the ages of 21 and 22, while providing adult education programs that can lead to high school diplomas for nondisabled individuals in that age range.  The Board contended instead that it was entitled to summary judgment dismissing the action on the ground that the adult education programs referred to by plaintiffs do not constitute "public education"

within the meaning of IDEA because those programs differ from the education provided in Connecticut's public schools. The district court identified two key questions: what constitutes public education within the meaning of IDEA, and whether Connecticut's adult education programs are within that IDEA concept.

Noting that "[t]he term 'public education' is not defined under the IDEA" and that this Court had not explored the term, the district court proceeded to accord the term its "ordinary, common-sense meaning," *A.R. v. Board II*, 2020 WL 3086032, at *5 (citing *Taniguchi v. Kan Pacific Saipan, Ltd.*, 566 U.S. 560, 566 (2012)), while taking into account "'its placement and purpose in the statutory scheme,'" *A.R. v. Board II*, 2020 WL 3086032, at *5 (quoting *United States v. Dauray*, 215 F.3d 257, 261 (2d Cir. 2000)). The district court also found helpful guidance in decisions of the Ninth and First Circuit Courts of Appeals that had explored essentially the same issue—a state's age restrictions on special education for persons under the age of 22, *see E.R.K. ex rel. R.K. v. Hawaii Department of Education*, 728 F.3d 982 (9th Cir. 2013) ("*E.R.K.*"), and *K.L. v. Rhode Island Board of Education*, 907 F.3d 639 (1st Cir. 2018) ("*K.L.*").

The district court observed that while "public education" is not itself defined in the statute, it is part of the IDEA term "free appropriate public education"; and the IDEA defines that term as "special education and related services" that

-21-

(A) have been provided at public expense, under public supervision and direction, and without charge;

(B) meet the standards of the State educational agency;

(C) include an appropriate preschool, elementary school, or secondary school education in the State involved; and

(D) are provided in conformity with the individualized education program required under section 1414(d) of this title.

*A.R. v. Board II*, 2020 WL 3086032, at *5 (quoting 20 U.S.C. § 1401(9)).  The court observed that, by

"strip[ping] out those aspects of the IDEA's definition of 'free appropriate public education' that clearly relate to the education's 'appropriateness,' as opposed to its 'free' and 'public' character, [one is] left with a reliable index of what 'free public education' means in § 1412(a)(1)(B)(I)."

*A.R. v. Board II*, 2020 WL 3086032, at *5 (quoting *E.R.K.*, 728 F.3d at 988).  The district court thus held that a

"public education," within the context of the IDEA, should be defined as one that is provided:  (1) at public expense through significant state or local governmental funding; (2) under the administration, supervision or oversight of state educational agencies; and (3) with the objective of educating students up to the level of academic proficiency associated with the completion of secondary school.

*A.R. v. Board II*, 2020 WL 3086032, at \*7.  *Accord E.R.K.*, 728 F.3d at 988; *K.L.*, 907 F.3d at 644.

Turning to the questions of whether Connecticut adult education programs fit that IDEA concept of public education, the court found that each of the three programs highlighted by plaintiffs meet all of the IDEA criteria.

> *GED instructional programs* are *provided by every local and regional educational agency in Connecticut* in order to *prepare adults for the GED examination. . . .  Adults who have not completed high school may take the GED examination and, if they pass the examination, achieve a Connecticut High School Diploma issued by the Board. . . .* To pass the GED examination, an individual must demonstrate the attainment of academic skills and concepts *normally acquired through completion of a high school program* through a four-part examination which includes a writing sample. . . .  *There are no costs or fees to the student taking the GED preparation classes. . . .  Although there is a thirteen-dollar fee to take the GED examination, pursuant to Conn. Gen. Stat. Sec. 10-5(c) the fee may be waived by the state if the student is unable to pay.  See . . .* Conn. Gen. Stat. Sec. 10-5(b), (c).

*A.R. v. Board II*, 2020 WL 3086032, at \*11 (emphases added).  And "[w]hile the Board does not itself administer the GED examination or provide instructional courses," the Board "has a designated GED program administrator who oversees all GED testing centers in Connecticut," it "monitors the local GED programs by reviewing reports

produced by local GED providers," and "upon successful completion of the GED examination," the Board awards "high school diplomas." *Id*. at *13.

As to the other two adult education programs in question, the court noted:

> AHSCD programs are provided by local educational agencies or regional educational service centers and *allow adults to earn credits toward a high school diploma. . . .* Each provider can enhance the basic AHSCD program, but must *adhere to the minimum state requirements*: (1) use certified teachers and counselors; (2) adhere to State Department of Education requirements regarding assessment, enrollment, accountability, and reporting; (3) meet required credit standards; and (4) ensure that a one credit course offers a minimum of 48 instructional hours. . . . *There are no costs or fees to the student seeking the AHSCD.*

*Id*. at *11 (emphases added).

> NEDP is an on-line portfolio assessment program that offers no classroom instruction and requires participating adults to work with an assessor to complete the program. . . . *An adult who successfully completes the portfolio assessment is awarded a high school diploma* by the providing local educational authority or regional educational service center. . . . The providing local educational authority or regional educational service center must seek the Board's permission before administering NEDP. . . . *There are no costs or fees to the student participating in the NEDP.*

*Id*. (emphases added). And while the "high school diplomas awarded upon successful completion of NEDP and AHSCD programs are issued by the local

-24-

educational agencies, rather [than] the Board, such diplomas . . . must conform to certain statewide requirements," and they "are signed by the Board." *Id*. at *13.

The court found that "[t]here is no genuine dispute that the Board and the state of Connecticut supervise and maintain oversight over GED, NEDP and AHSCD programs," *id.*; that "Connecticut provides funding for . . . GED, AHSCD and NEDP," *id*. at *12; and that the "GED, NEDP and AHSCD programs . . . are free of charge to participating students," *id*.

The Board does not deny that the three adult education programs at issue satisfy the court's definition of public education. Instead, the Board contends that the district court's definition itself is incorrect because Connecticut views public education as "public *school*[]" education (*e.g.*, Board brief on appeal at 24-25 (emphasis added)). While the Board states that "the 1975 *definition of 'public education' in Connecticut* should govern" IDEA claims (Board brief on appeal at 23 (emphasis added)), it in fact never points to any actual definition of the term public education in the Connecticut constitution, statutes, or regulations. Rather, the Board extrapolates from various language in those proposed sources to argue that Connecticut views public education only as education provided in the actual public school system, *i.e.*, that "Public Education In Connecticut Is The Education Provided

-25-

In Connecticut Public Schools." (*Id*. at 22). The Board thus urges us to interpret "public education" in Connecticut as traditional "public school" education, *i.e.*, only the "education provided by Connecticut local school districts." (*Id*. at 26.) We, like the district court, *see, e.g., A.R. v. Board II*, 2020 WL 3086032, at *7 n.8 ("declin[ing] to tailor the [IDEA] definition of 'public education' to Connecticut law"), decline to do so.

As the district court noted, when dealing with an undefined federal statutory term, we interpret it in accordance with its ordinary common sense meaning, *see Taniguchi*, 566 U.S. at 566, "at the time of its enactment," *Bostock v. Clayton County*, 140 S. Ct. 1731, 1738 (2020), and in light of its "context" and its "place in the overall statutory scheme," *Utility Air Regulatory Group v. E.P.A.*, 573 U.S. 302, 320 (2014). That statutory scheme is the federal statute, not the scheme suggested by the collection of laws, regulations, and constitutional directives of a particular state. To look to the views of each state for identification of the IDEA concept of public education could result in fifty different interpretations of IDEA. *See, e.g., A.R. v. Board II*, 2020 WL 3086032, at *7 n.8. *Accord K.L.*, 907 F.3d at 645. "[I]t would also permit states to circumvent the FAPE requirement by characterizing any educational services they provide to students aged 18 through 21 as something other than 'public education.'" *Id*.

As the district court further noted, to accept the Board's contention that "public education" as used in IDEA does not include adult education programs because they have some differences from education provided in the public schools would be contrary to the intent and remedial purposes of IDEA. The concept of "'public education' under the IDEA is not limited to educational opportunities provided by state public schools . . . ." *A.R. v. Board II*, 2020 WL 3086032, at *10. *Accord E.R.K.*, 728 F.3d at 990. Rather, the definition of public education extrapolated from IDEA's requirement of a "free appropriate public education," adopted by the district court and by the Ninth and First Circuits, more accurately reflects the federal statutory scheme. And as discussed above, at least three of Connecticut's adult education programs meet all of the criteria to be considered public education, and they are required by State law:

> Conn. Gen. Stat. § 10-69(a) *obliges each local and regional board of education to "establish and maintain a program of adult classes* . . . for its adult residents," *including "secondary school completion programs*." The statute provides that each local or regional board of education "may admit an adult to *any* public elementary or secondary school." *Id*. *Eligibility for such programs is not limited on the basis of age—in fact, the statute defines an adult as "any person seventeen years of age or older*." *See* Conn. Gen. Stat. § 10-67(1). The Board's own website states that "Sections 10-67 to 10-73(d), inclusive, of the Connecticut General Statutes (C.G.S) *require that the adult education services described in this section be provided by local*

> *school districts, free of charge, to any adult 17 years of age or older who is not enrolled in a public elementary or secondary school program." The Board admits that individuals over the age of 21 regularly enroll in Connecticut adult education programs.*

*A.R. v. Board II*, 2020 WL 3086032, at \*10 (footnote omitted) (first "*any*" emphasized in original; other emphases ours). For the district court to have excluded from the extrapolated IDEA definition of "public education" these State-administered, publicly-funded adult education programs, through which "Connecticut law allows individuals over the age of 21 to pursue secondary education" but excludes disabled individuals who have not completed such education and are between the ages of 21 and 22, would have been contrary to IDEA's intent that its prescribed remedies be available to disabled individuals in the expressly defined age range. *Id*. at \*11.

Finally, we are unpersuaded by the Board's contention that the district court's award of compensatory education as an equitable remedy for gross violation of IDEA should be set aside for "abuse of discretion" (Board brief on appeal at 37). The Board's statement that it has terminated students' FAPEs before they reached the age of 22 "for over 40 years" (*id*. at 50) serves more to emphasize than to undermine the district court's conclusion that the Board practiced "systemic" disregard of IDEA's age provisions, *A.R. v. Board II*, 2020 WL 3086032, at \*17, a disregard that deprived

some students of IDEA rights entirely. Further, the Board acknowledges that this Court in *Lillbask*—a case against the Board that was decided more than a decade prior to the present action—had expressly interpreted IDEA's age range "as providing non-graduating children with disabilities [the right] to receive a FAPE until they reach the age of 22" (Board brief on appeal at 20). In all the circumstances, we see no abuse of discretion in the district court's order that the Board provide appropriate plaintiff class members with compensatory education.

## CONCLUSION

We have considered all of the Board's arguments on this appeal and have found them to be without merit. The judgment of the district court is affirmed.