**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

A.R., *on behalf of a Class of those*
*similarly situated*,
    *Plaintiff*,

    v.

CONNECTICUT STATE BOARD OF
EDUCATION,
    *Defendant*.

Case No. 3:16-cv-1197 (CSH)
August 24, 2023

## RULING ON AMENDED MOTION FOR ATTORNEYS' FEES AND COSTS

**HAIGHT, Senior District Judge:**

In this class action brought under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.*, Plaintiff and the Plaintiff Class have succeeded at summary judgment and on appeal. They now seek attorneys' fees and costs. Defendant consents. Pursuant to the IDEA, the Court will determine whether the requested award is appropriate.

## I. BACKGROUND

In this class action brought under the IDEA, this Court ultimately granted summary judgment to the named Plaintiff and the Plaintiff Class. *See A.R. v. Connecticut State Bd. of Educ.*, No. 3:16-CV-01197 (CSH), 2020 WL 3086032 (D. Conn. June 10, 2020), *aff'd*, 5 F. 4th 155 (2d Cir. 2021). The Court held that Defendant Connecticut State Board of Education violated IDEA when it denied, on the basis of age, a free appropriate public education to disabled students before the age of 22. In an opinion decided on July 8, 2021, the Second Circuit affirmed this Court's summary judgment in Plaintiff's favor. *See A.R. v. Connecticut State Bd. of Educ.*, 5 F.4th 155 (2d Cir. 2021). The Court of Appeals issued its mandate on July 30, 2021. Doc. 95.

Following entry of this Court's order in favor of Plaintiff A.R. and the Plaintiff Class, Plaintiff filed a motion on July 24, 2020 [Doc. 88] for an order directing Defendant to pay Plaintiff $103,872.50 in attorneys' fees and $9,613.32 in litigation costs. Plaintiff based that motion on the fee-shifting provision in IDEA, which grants district courts discretion to "award reasonable attorneys' fees as part of the costs— (I) to a prevailing party who is the parent of a child with a disability . . . ." 20 U.S.C. § 1415(i)(3)(B)(i). The briefing and decision of this motion were stayed pending the appeal.

On December 17, 2021, with the Second Circuit having issued its mandate, Plaintiff filed an amended motion [Doc. 100] seeking $139,755 in attorneys' fees and $10,013.16 in litigation costs.[1] The difference in relief sought is due to "additional attorneys' fees and costs" incurred since the original motion was made, "mostly for successfully defending the appeal of this action." Doc. 98 ¶ 4. In support of the motion, Plaintiff includes a memorandum of law, the declarations and contemporaneous time entries of four attorneys representing Plaintiff, an accounting of costs, and a declaration by a Connecticut civil rights attorney otherwise uninvolved in this case concerning the reasonableness of the fees requested.[2]

On February 4, 2022, Defendant filed a response. "In keeping with the Supreme Court's important but oft ignored instruction that '[a] request for attorney's fees should not result in a second major litigation[,]'" Doc. 105 at 2 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 437) (1983)), Defendant stated that it has no objection to the requested award and agrees that "Plain-

---

[1] The amended motion, due to what is plainly a typographical error, seeks "$139.777" in attorneys' fees. *See* Am. Mot. at 1. Plaintiff's supporting memorandum makes clear that the amount actually sought is $139,777. *See* Pl.'s Am. Mem. [Doc. 100-1] at 1, 6, 11.

[2] Decl. of Jason H. Kim [Doc. 100-2] ("Kim Declaration"); Exh. A [Doc. 100-3] ("Kim Time Entries"); Exh. B [Doc. 100-4] ("Kim Time Entries on Appeal"); Exh. C [Doc. 100-5] ("Case Costs"); Decl. of Sonja L. Deyoe [Doc. 100-6] ("Deyoe Declaration"); Exh. A [Doc. 100-7] ("Deyoe Time Entries"); Decl. of Catherine E. Cushmanin [sic] [Doc. 100-8] ("Cushman Declaration"); Exh. A [Doc. 100-9] ("Cushman Time Entries"); Decl. of Kasey Considine [Doc. 100-10] ("Considine Declaration"); Exh. A [Doc. 100-11] ("Considine Time Entries"); Decl. of Elana Bildner [Doc. 100-12] ("Bildner Declaration").

tiff's counsel have both used local prevailing hourly rates and exercised sound billing judgment."
*Id.* at 1–2.

Notwithstanding Defendant's consent, the Court will review Plaintiff's requested award for reasonableness under the IDEA.

## II. LEGAL STANDARD

The IDEA provides that "[i]n any action or proceeding brought under this section, the court, in its discretion, may award reasonable attorneys' fees as part of the costs— (I) to a prevailing party who is the parent of a child with a disability." 20 U.S.C. § 1415(i)(3)(B). In doing so, "a district court must ordinarily make two determinations. It must first determine whether the party seeking the award is a prevailing party. If the party is a prevailing party, the court must then determine whether, under the appropriate standard, that party should be awarded attorney's fees." *Mr. L. v. Sloan*, 449 F.3d 405, 407 (2d Cir. 2006) (Sotomayor, J.).

A party need not prevail on every issue to be designated a "prevailing" party for this purpose. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) (construing 42 U.S.C. § 1988, which provides that in a federal civil rights action, the district court "may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs."); *see also I.B. v. New York City Dept. of Educ.*, 336 F.3d 79, 80 (2d Cir. 2003) ("We interpret the IDEA fee provisions in consonance with those of other civil rights fee-shifting statutes."). The Second Circuit has held that "to be considered a prevailing party, a plaintiff must not only achieve some material alteration of the legal relationship of the parties, but the change must also be judicially sanctioned." *Ma v. Chertoff*, 547 F.3d 342, 344 (2d Cir. 2008) (internal quotations omitted).

When an award is granted under the IDEA, it should include fees incurred in a successful appeal. *See G.M. ex rel. R.F. v. New Britain Bd. of Educ.*, 173 F.3d 77, 84 (2d Cir. 1999) ("In-

3

cluded in the award should be not only the time spent on the administrative proceeding, but the time expended on this suit (including this appeal) as well.").

Even if a party is a prevailing party, the IDEA enumerates five circumstances in which attorneys' fees are unavailable or must be reduced. An award is unavailable when a written offer of settlement was made, was not accepted within ten days, and the relief eventually obtained was "not more favorable to the parents than the offer of settlement[,]" unless the prevailing parents were "substantially justified in rejecting the settlement offer." 20 U.S.C. § 1415(i)(3)(D). An award must be reduced "whenever the court finds that" the parents or their attorney "unreasonably protracted" the case's resolution; that the request "unreasonably exceeds the hourly rate prevailing in the community for similar services by attorneys of reasonably comparable skill, reputation, and experience;" that "the time spent and legal services furnished were excessive considering the nature of the action or proceeding;" or that notice of the parents' attorney's complaint was deficient. 20 U.S.C. § 1415(i)(3)(F). These four scenarios, in which the award should be reduced, do not apply "if the court finds that the [defendant] unreasonably protracted the final resolution of the action or proceeding or there was a violation of this section." 20 U.S.C. § 1415(i)(3)(G).

## III. DISCUSSION

### A. Attorneys' Fees

Plaintiff requests an award of $139,755 in attorneys' fees. *See* Pl.'s Am. Mem. at 1, 6, 11.

### *1. Propriety of a Fee Award*

The Court's first task is to determine whether Plaintiff is the prevailing party. Here, that task is a simple one. "'A plaintiff 'prevails' when actual relief on the merits of his [or her] claim

materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff.'" *K.L. v. Warwick Valley Cent. Sch. Dist.*, 584 Fed. App'x 17, 18 (2d Cir. 2014), *quoting Farrar v. Hobby*, 506 U.S. 103, 114 (1992).

In my ruling on the Parties' cross motions for summary judgment, I found that the Connecticut State Board of Education's "systemic denial of a free appropriate public education to individuals with disabilities between the ages of 21 and 22 . . . constitutes a gross violation of the IDEA" and granted Plaintiff's motion for summary judgment and demand for injunctive and declaratory relief on behalf of the Plaintiff Class.[3] 2020 WL 3086032, at \*16–17. Specifically, that ruling

> (a) DECLARES that the Board's current or future refusal to provide Plaintiff A.R. and the members of the Class a free appropriate public education pursuant to the age limitations established by Conn. Gen. Stat. § 10-76d(b) and Conn. Agencies Reg.§ 10-76d-1(a)(4) violates the IDEA, 20 U.S.C. §§ 1412(a)(1),1407, 1412(11); [and]
>
> (b) ENJOINS the Board from terminating a free appropriate public education as to Plaintiff A.R. and the members of the Class before they reach the age of 22.

*Id.* at \*16. I also ordered that the Board provide compensatory education to members of the Plaintiff Class "to the extent that they have already been denied a free appropriate public education unlawfully." *Id.* at \*17 (internal quotation marks omitted).

While the provision of compensatory education remained outstanding as of the filing of Plaintiff's amended motion, the other relief already obtained by Plaintiff is sufficient to support a fee award, as the declaratory and injunctive relief granted have "materially alter[ed] the legal re-

---

[3] The Plaintiff Class consists of the following:

> All individuals who were over 21 and under 22 within two years before the filing of this action or will turn 21 during the pendency of this action who are provided or were provided a [free appropriate public education] under the IDEA by any [Local Education Agency] in the State of Connecticut and who, but for turning 21, would otherwise qualify or would have qualified for a [free appropriate public education] until age 22 because they have not or had not yet earned a regular high school diploma ("the Class").

*Id.* at \*1.

lationship between the parties by modifying the defendant's behavior in a way that directly bene-

fits the plaintiff." *K.L.*, 584 Fed. App'x at 18. The declaration submitted by Elana Bildner, a staff

attorney at the ACLU Foundation of Connecticut who did not represent a party in this case, sup-

ports this conclusion. As Attorney Bildner writes: Plaintiff's attorneys "were able to achieve a

complete victory in this case, as recently affirmed by the Second Circuit. Their advocacy will

have a valuable impact on the availability of special education services for students with disabili-

ties between the ages of 21 and 22 years old in Connecticut." Bildner Decl. ¶ 6.

The Court agrees. Moreover, this change in the relationship between the parties, as an or-

der of the Court, is "judicially sanctioned," as required in the Second Circuit. *Ma*, 547 F.3d at

344. Accordingly, the Court finds that Plaintiff is a prevailing party as defined by the IDEA.

The Court's second task is to determine, "whether, under the appropriate standard, Plain-

tiff should be awarded attorney's fees." *Mr. L.*, 449 F.3d at 407. The IDEA enumerates five cir-

cumstances in which attorneys' fees are unavailable or must be reduced. *See* 20 U.S.C. §§

1415(i)(3)(D), (F) (concerning (1) unjustified rejection of favorable settlement offer, (2) unrea-

sonably protracted litigation, (3) unreasonable hourly rates, (4) excessive legal services consider-

ing the nature of the action, and (5) defective notice). The Court finds no indication of circum-

stances (1), (4), or (5), and will therefore turn to the reasonableness of the attorneys' hourly rates

and the legal services provided.

*2. Hourly Rates*

In considering the propriety of attorney's fees, "the district court must first determine the

lodestar—the product of a reasonable hourly rate and the reasonable number of hours required by

the case—[which] creates a presumptively reasonable fee." *Dubois v. Maritimo Offshore Pty*

*Ltd.*, 422 F. Supp. 3d 545, 563 (D. Conn. 2019) (quoting *Millea v. Metro-N. R.R. Co.*, 658 F.3d

154, 166 (2d Cir. 2011)) (internal quotation marks omitted). Factors relevant to determining the reasonableness of rates include whether the rates are the same as those that the attorneys "ordinarily charge[.]" *Humphrey v. Crea*, No. 3:15-CV-01164 (JAM), 2019 WL 3561899, at *4 (D. Conn. Aug. 6, 2019) (adjusting rates downward to remove a $50-per-hour surcharge that attorneys added to their usual rates due to the purported "greater complexity of federal court" than state court).

"[D]etermination of a reasonable hourly rate 'contemplates a case-specific inquiry into the prevailing market rates for counsel of similar experience and skill to the fee applicant's counsel.'" *Townsend v. Benjamin Enters., Inc.*, 679 F.3d 41, 59 (2d Cir. 2012) (quoting *Farbotko v. Clinton Cty.*, 433 F.3d 204, 209 (2d Cir. 2005)). As this Court noted in *A. v. Hartford Bd. of Educ.*, this inquiry "may 'include judicial notice of the rates awarded in prior cases and the court's own familiarity with the rates prevailing in the district.'" No. 3:11-CV-01381-GWC, 2017 WL 187138, at *3 (D. Conn. Jan. 17, 2017) (quoting *Townsend*, 679 F.3d at 59). However, if the fee applicants provide evidence that contradicts or supersedes those rates, then the proper "determination of the prevailing market rate in the relevant community also requires an evaluation of evidence proffered by the parties." *Farbotko v. Clinton Cnty. of N.Y.*, 433 F.3d 204, 209 (2d Cir. 2005). The Court will apply current hourly rates, rather than the historic rates, absent a showing that Plaintiff caused the delay. *See A. v. Hartford Bd. of Educ.*, 2017 WL 187138, at *3 (noting that the use of "current rates compensates [the applicant] for the passage of time").

Plaintiff has requested hourly rates as summarized in Table 1, Hourly Rates Requested.

| Table 1, Hourly Rates Requested | |
|---|---|
| ATTORNEY/PARALEGAL | HOURLY RATE |
| Attorney Jason H. Kim | $450 |
| Attorney Sonja L. Deyoe | $425 |
| Attorney Catherine Cushman | $400 |
| Attorney Kasey Considine | $250 |
| Paralegal Kelly Winter | $125 |

Attorney Kim is a partner in the law firm of Schneider Wallace Cottrell Konecky LLP, in Los Angeles, California. Kim Decl. ¶ 1. He graduated from Harvard Law School *magna cum laude* in 1998 and had, as of 2022, more than 23 years of experience in litigation. *Id.* ¶ 3. His practice has included successfully representing plaintiff classes under the Americans with Disabilities Act and other civil rights statutes in the Ninth Circuit and District of Hawaii. *Id.* ¶ 5.

Although the "vast majority of [Attorney Kim's] legal work is performed on a contingency basis[,]" Attorney Kim's standard hourly rate is $1005, and he has in fact received that rate for engagements in which his firm has been retained on an hourly basis. *Id.* ¶ 4. He seeks an hourly rate in this matter of $450 per hour. Pl.'s Mem. at 8. Attorney Bildner opines that based "upon [her] review of [Attorney Kim's] resume and briefing," she "understand[s] Mr. Kim is an experienced class action attorney who has assisted students with disabilities in several states to retain eligibility to special education services by successfully litigating similar cases." Bildner Decl. ¶ 10. Attorney Bildner is "familiar with the rates charged by other attorneys in this district

for work in federal civil rights (and other) suits" and concludes that the proposed rate of $450 per hour in this case would be "more than fair and reasonable." *Id.* ¶ 12.

The Court finds $450 to be a reasonable hourly rate for Attorney Kim's work in this matter, in light of Attorney Kim's qualifications and experience and the sophistication required to successfully litigate this class action. Attorney Kim's proposed rate is also comparable to rates approved in similar IDEA and civil rights lawsuits in this District. *See, e.g.*, *A. v. Hartford Bd. of Educ.*, 2017 WL 187138, at *5 (approving hourly rate of $450 in 2017 for an experienced attorney and finding that rate commensurate with "the prevailing market rate for experienced attorneys practicing special education law in Connecticut[,]" although being "in the top tier of rates awarded in the District of Connecticut" at that time); *Valley Hous. Ltd. P'ship v. City of Derby*, No. 3:06-CV-1319 TLM, 2012 WL 1077848, at *5 (D. Conn. Mar. 30, 2012) (finding hourly rate of $485 reasonable, in 2012, for experienced civil rights attorney who had a remarkable track record of success in complex cases); *Muhammed v. Martoccio*, No. 3:06-CV-1137 WWE, 2010 WL 3718560, at *4 (D. Conn. Sept. 13, 2010) (finding hour rate of $500 reasonable, in 2010, for attorney with "substantial experience in litigating criminal and civil cases").

For Attorney Deyoe, Plaintiff requests an hourly rate of $425. Attorney Deyoe is a partner in the law firm of the Law Offices of Sonja L. Deyoe, and as of 2021 had 21 years of litigation experience. Deyoe Decl. ¶¶ 2–3. Her standard hourly rate is $425, which she received as of 2021 in employment and civil rights matters for which she has been retained on an hourly basis. *Id.* ¶ 3. She has appeared in more than one hundred cases in the United States District Courts for the Districts of Rhode Island and Massachusetts and has served as counsel for plaintiff class in the district court and appellate proceedings in *K.L. v. R.I. Bd. of Educ.*, 907 F.3d 639 (1st Cir. 2018), which addresses matters similar to those raised by this case. *Id.* ¶¶ 2, 4. Attorney Bildner

represents that based on her review of Attorney Deyoe's resume, she considers Attorney Deyoe an experienced civil rights attorney and that the rate sought is "commensurate with the rates charged by other attorneys for similar work." Bildner Decl. ¶¶ 10, 12. In light of Attorney Deyoe's qualifications and experience, the Court finds reasonable the proposed rate of $425 for her work in this matter.

Plaintiff requests an hourly rate of $400 for work performed by Attorney Cushman. Attorney Cushman served as Legal Director of Disability Rights Connecticut (DRCT) until September 11, 2020, as of which time she had more than twenty years of experience in litigation and had a standard hourly rate of $400. Cushman Decl. ¶ 2; *see also* Doc. 94 (Electronic Order). Her experience includes representing plaintiffs in disability and civil rights litigation in federal district court, state court, and administrative hearings. *Id.* ¶ 4. Attorney Cushman previously worked for ten years as an attorney for Connecticut Legal Services, and before that, for ten years as an attorney with the State of Connecticut Office of Protection and Advocacy for Persons with Disabilities. *Id.* In these roles, she represented approximately three hundred individuals in the areas of special education, discrimination on the basis of disability, vocational rehabilitation, and the rights of institutionalized persons with developmental disabilities and mental illness. *Id.* Her prominent representations include serving as lead class counsel in a class action filed on behalf of the deaf or hard of hearing against all Connecticut hospitals, alleging violations of Title II and III of the Americans with Disabilities Act, and serving as co-counsel in a class action brought on behalf of persons with brain injuries alleging that the State of Connecticut failed to provide treatment and services in the community, resulting in unnecessary institutionalization. *Id.* ¶ 5. In light of Attorney Cushman's qualifications and experience, the Court finds reasonable the proposed rate of $400 for her work in this matter.

Plaintiff requests an hourly rate of $250 for work performed by Attorney Considine. Attorney Considine is the Supervising Attorney at DRCT and has somewhat less experience than Attorneys Kim, Deyoe, and Cushman, having been first admitted to practice law in 2016. Considine Decl. ¶¶ 1–2. As of 2021, Attorney Considine's practice in the preceding five years had been exclusively on behalf of children and adults with disabilities, including representations in at administrative hearings, mediation, and litigation in this district and the Second Circuit. *Id.* ¶ 3.

Attorney Bildner states that she is "well-acquainted with Kasey Considine and [is] familiar with her experience and expertise" based on their work as co-counsel on a separate case. Bildner Decl. ¶ 7. She notes that Attorney Considine's "expertise in disability rights law and issues is on frequent display" in their work together, and that based on Attorney Considine's "significant disability law credentials," she believes the proposed rate of $250 per hour "is more than reasonable." *Id.* ¶¶ 7–8. The Court agrees.

Finally, Plaintiff requests an hourly rate of $125 for 3.3 hours of work performed by Paralegal Winter of Attorney Kim's law firm, Schneider Wallace Cottrell Konecky. Pl.'s Mem. at 9. In support, Plaintiff cites a 2017 Second Circuit case affirming an award of $125 per hour for a paralegal. *Restivo v. Hessemann* 846 F.3d 547, 569 (2d Cir. 2017). Although the hourly rate granted by the district court in *Restivo* was based on rates prevailing in the Southern District of New York, I find that the proposed rate of $125 for paralegal work is also a reasonable prevailing rate in this action. *See A. v. Hartford Bd. of Educ.*, 2017 WL 187138, at *7 ("This court has in recent cases concluded that $140 is a reasonable paralegal rate, and will apply that rate in this [IDEA] case."); *M.K. v. Sergi*, 578 F. Supp. 2d 425, 428 (D. Conn. 2008) (awarding rate of $100 per hour for a paralegal in District of Connecticut IDEA litigation in 2008).

11

As the Court finds reasonable the proposed hourly rates, and sees no indication that they "unreasonably exceed[] the hourly rate[s] prevailing in the community for similar services by attorneys of reasonably comparable skill, reputation, and experience[,]" 20 U.S.C. § 1415(i)(3)(F), it turns next to the hours billed.

### 3. Hours Billed

The parties have provided the prerequisite "contemporaneous records that specify the attorney, the hours spent, and the nature of the work done[.]" *Barham v. Wal-Mart Stores, Inc.*, No. 3:12-CV-01361 (VAB), 2017 WL 6459502, at *4 (D. Conn. Dec. 18, 2017).[4]

On this basis, the Court now reviews the reasonableness of the time spent. Collectively, the work of Plaintiff's counsel reflects an appropriate division of labor between higher- and lower-billing attorneys and other staff, and between local and out-of-state counsel. While some of the time entries reflect work on which multiple attorneys and staff were involved, this alone does not render such work duplicative. *See Dubois*, 422 F. Supp. 3d at 563 ("[I]t seems to me the antithesis of duplicative billing for a senior attorney to follow up with, and check over, the work of a more junior colleague."). The time entries are described in sufficient detail for the Court to confirm that the hours were reasonably spent, in consideration of the scope of the factual and legal issues involved in this class action and the degree of success counsel ultimately obtained. *See generally* Kim Time Entries; Kim Time Entries on Appeal; Deyoe Time Entries; Cushman Time Entries; Considine Time Entries. Finally, the entries submitted reflect the exercise of sound bill-

---

[4] *See* Kim Decl. ¶ 6 ("These reports were generated from [Schneider Wallace Cottrell Konecky LLP's] computerized time-keeping system. Attorneys and paralegals at [the firm] input their time into this system at or near the time when they perform the tasks associated with that time."); Deyoe Decl. ¶ 5 ("These reports were generated from my computerized time-keeping system. I input my time at or near the time of the events listed therein, generally within 48 hours thereof. At minimum I verify these entries on a weekly basis."); Cushman Decl. ¶ 5 ("This accounting is based on contemporaneous itemized daily log records[.]"); Considine Decl. ¶¶ 6, 8 ("Throughout the duration of this matter, I have kept a contemporaneous itemized daily log of my work. I document my time at or near the time of the activity, and at least within twenty-four (24) hours of completing the activity. At a minimum, I verify these entries on a biweekly basis, as is required for all attorneys at DRCT.")

ing judgment in excluding potentially duplicative work.[5] This includes writing off approximately thirty percent of the total hours billed by DRCT attorneys. *See* Pl.'s Mem. at 7.

Accordingly, the Court finds the hours billed by all attorneys in this matter, and by Paralegal Winter, to be fair and reasonable. There is no indication that "the time spent and legal services furnished were excessive considering the nature of the action or proceeding[.]" 20 U.S.C. § 1415(i)(3)(F). The Court will therefore award the resulting total of $139,755 in attorneys' fees to Plaintiff's counsel.

### B. Out-of-Pocket Costs

Plaintiff also seeks an award of $10,013.16 in "reimbursable litigation expenses." Pl.'s Mem. at 11. Attorney Kim has filed an itemized list of such expenses, consisting of fees for attorney admissions; the Connecticut State Marshal's fee for service of summons; fees for legal research and docket access; the costs of printing and supplies for depositions; transcription fees; and travel costs associated with attending depositions, including airfare, in-flight Wi-Fi, hotels, meals, taxis, and Uber rides. Pl.'s Exh. C [Doc. 100-5].

---

[5] *See* Kim Decl. ¶ 6 ("I deleted the time of individuals who billed only a de minimis amount of time to this matter and deleted time mostly incurred by a summer law clerk preparing a motion for attorneys' fees to the Second Circuit which was not filed."); Deyoe Decl. ¶ 5 ("I deleted numerous time entries related to notices or orders of the Court in which I was not involved, some correspondence with [attorneys] in this matter, and the time that I spent reviewing the brief and appellate materials in this matter as it was duplicative."); Cushman Decl. ¶ 5 ("Where some duplication could not be avoided, I did not include those hours of work in my accounting. . . . I deleted numerous time entries related to notices or orders of the Court in which I was not involved, Court proceedings in which I did not speak, and some correspondence with [a]ttorneys in this matter to which I was just copied."); Considine Decl. ¶¶ 9–12 ("I did not charge for . . . certain activities, including: (1) contacts with the media, community groups, and other organizations; (2) contacts with DRCT attorneys and staff . . . ; (3) some communications with . . . colleagues . . . ; and (4) any time that was duplicative or otherwise excessive . . . . Second, I actually omitted altogether a number of legitimate, case related activities, such as: (1) most communications with other attorneys and support staff at DRCT working on this case including my direct supervisor . . . ; (2) most communications with potential individual class members, their family members and guardians, and other entities involved in supporting this litigation; (3) some legal and factual research; and (4) miscellaneous activities which I deemed too small or incidental to record . . . . Third, DRCT made the decision to eliminate altogether . . . all time spent by other DRCT attorneys on this appeal, including [Attorney] Cushman, who assisted on various aspects of this appeal. This decision was an effort to ensure the total amount of time by the DRCT in this case was reasonable. Additionally, I did not charge for any nonbillable time such as such as filing and serving my Notice of Appearance . . . .")

The IDEA allows an award of "reasonable attorneys' fees as part of the costs" of litiga-

tion. 20 U.S.C. § 1415(i)(3)(B). The Second Circuit defines attorneys' fees to "include those rea-

sonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients."

*LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 763 (2d Cir. 1998) (quoting *U.S. Football League*

*v. Nat'l Football League*, 887 F.2d 408, 416 (2d Cir.1989)). However, the precise scope of al-

lowable costs under the IDEA has been contested.

In 2003, I was presented with the issue of whether the IDEA allows prevailing parents to

recover expert fees paid to an educational consultant during an administrative process and subse-

quent litigation. *Murphy v. Arlington Cent. Sch. Dist. Bd. of Educ.*, No. 99 CIV. 9294 CSH, 2003

WL 21694398, at *9 (S.D.N.Y. July 22, 2003), *aff'd*, 402 F.3d 332 (2d Cir. 2005), *rev'd*, 548

U.S. 291 (2006). I concluded that such fees were compensable. *Id.* Following affirmance on ap-

peal, the Supreme Court granted certiorari.

Justice Alito, writing for the Court, concluded that such expert fees are not reimbursable.

*Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*, 548 U.S. 291, 296–98 (2006). Justice Alito

wrote:

> § 1415(i)(3)(B) does not say that a court may award "costs" to prevailing parents;
> rather, it says that a court may award reasonable attorney's fees "as part of the
> costs" to prevailing parents. This language simply adds reasonable attorney's fees
> incurred by prevailing parents to the list of costs that prevailing parents are oth-
> erwise entitled to recover. This list of otherwise recoverable costs is obviously the
> list set out in 28 U.S.C. § 1920, the general statute governing the taxation of costs
> in federal court[.]

*Id.* at 297. This language would seem to suggest that the only allowable "costs" a prevailing par-

ty may recover in an IDEA suit are those falling into the narrow categories of § 1920: fees of the

clerk and marshal, transcription fees, printing and witness fees, fees for copying and exemplifica-

tion, docket fees, and fees for court-appointed experts and interpreters. 28 U.S.C. § 1920.

Nonetheless, trial courts since *Arlington* have routinely awarded costs outside the § 1920 categories.[6]

Some have characterized Justice Alito's language regarding § 1920 as dicta and interpreted *Arlington*'s holding as limited to the exclusion of *expert* fees. *See Hammond*, 183 F. Supp. 3d at 158 ("Justice Alito's statement that the term cost under § 1415(i)(3)(B) is limited to the costs under § 1920 is dicta; *Arlington* holds only that the term cost under § 1415(i)(3)(B) does not include 'fees for services rendered by experts in IDEA actions.'").

Others, following the Second Circuit's broad definition of attorneys' fees in *LeBlanc*, have interpreted the category of attorneys' fees to include attorneys' out-of-pocket expenses. *See, e.g.*, *C.C. ex rel. Mrs. D.*, 453 F. Supp. 2d at 576 n.5 ("*LeBlanc–Sternberg* still controls as to out-of-pocket expenses that are not expert witness fees.").

The second approach finds support in *West Virginia University Hospitals, Inc. v. Casey*, a decision of the Supreme Court prior to *Arlington* that addressed the award of fees and costs in the context of 42 U.S.C. § 1988 litigation. *W. Va. Univ. Hosps., Inc. v. Casey*, 499 U.S. 83, 87 n.3 (1991). In *Casey*, the Court discussed counsel's disbursements of $45,867, including for travel and long-distance telephone calls, and stated, "it is likely that these disbursements (billed directly to the client) were thought subsumed within the phrase 'attorney's fee.'" 499 U.S. 83, 87 n.3 (1991).

Regardless of the reasoning, district courts in this and other circuits have routinely interpreted *Arlington* as allowing ordinary costs beyond the categories laid out in § 1920. *See, e.g.*,

---

[6] *See, e.g.*, *C.C. ex rel. Mrs. D. v. Granby Bd. of Educ.*, 453 F. Supp. 2d 569, 576 (D. Conn. 2006) (awarding fees for mailing documents by Federal Express, even though "these expenses do not fall within the enumerated categories of taxable costs under § 1920"); *P. ex rel. Mr. P. v. Newington Bd. of Educ.*, 512 F. Supp. 2d 89, 116 (D. Conn. 2007) (awarding the cost of issuing a subpoena to an expert witness, even though compensation paid to the expert witness would not be awardable under *Arlington*), *aff'd*, 546 F.3d 111 (2d Cir. 2008); *C.D. v. Minisink Valley Cent. Sch. Dist.*, No. 17 CIV. 7632 (PAE), 2018 WL 3769972, at *12 (S.D.N.Y. Aug. 9, 2018) (awarding costs of mileage and meals related to hearings); *Hammond v. District of Columbia*, 183 F. Supp. 3d 145, 158 (D.D.C. 2016) (awarding costs of copying and postage).

*C.D. v. Minisink Valley Cent. Sch. Dist.*, 2018 WL 3769972, at *12. This Court will follow their lead.

Defendant makes no objection to the costs included in Plaintiff's request, and the Court finds no infirmities in the recorded expenses. All expenses laid out in Attorney Kim's filing are reasonable expenses related to the action and are in categories ordinarily awarded to prevailing parties in IDEA litigation. *See C.C. ex rel. Mrs. D.*, 453 F. Supp. 2d at 576 (mailing costs); *P. ex rel. Mr. P.*, 512 F. Supp. 2d at 116 (subpoena costs); *C.D.*, 2018 WL 3769972, at *12 (mileage and meals); *Hammond*, 183 F. Supp. 3d at 158 (photocopying and postage costs). Accordingly, the Court will award the requested $10,013.16 in reimbursable litigation expenses to Plaintiff.

## IV. CONCLUSION

For the reasons discussed above, Plaintiff's Amended Motion for an Award of Attorneys' Fees and Costs [Doc. 100] is **GRANTED**. Plaintiff is entitled to recover $139,755 in attorneys' fees and $10,013.16 in litigation expenses from Defendant. Defendant shall pay said sum no later than **October 24, 2023**.

It is SO ORDERED at New Haven, Connecticut, this 24th day of August 2023.

*/s/ Charles S. Haight, Jr.*
CHARLES S. HAIGHT, JR.
Senior United States District Judge